(83 South. 773)

No. 23678.

RUSSELL et al. v. PRODUCERS' OIL CO. et al.

(Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. MINES AND MINERALS ☞79(3) — LESSORS ENTITLED TO ROYALTIES ON OIL COMMINGLED WITH OIL FROM OTHER WELLS WHERE APPROXIMATE AMOUNT COULD BE ASCERTAINED.

Where oil lessees refused to deliver royalties to lessors because of dispute as to whether well was on lessors' land, and for purpose of operating economically ran the oil from such well into pipe line, commingling it with oil from other wells, without keeping a record of exact amount of oil produced by well on lessors' land, lessors were not entitled to recover royalties on all of the oil so commingled, where the output of each well was known approximately, so that full justice could be done to plaintiff by letting them have the royalties on the proximate output of their well, plus a margin of safety.

2. MINES AND MINERALS ☞79(3)—ROYALTIES TO OIL LESSOR VALUED ACCORDING TO PRICE RECEIVED, AND NOT ACCORDING TO MARKET VALUE AT TIME OF JUDGMENT FOR ROYALTIES.

Where defendant oil lessees delivered oil as royalties to lessors of land adjoining that on which well was situated instead of to plaintiff lessors of such land, lessors in recovering royalties were not entitled to have oil valued at its market value at time when judgment was rendered, but value thereof will be determined by price received therefor by other lessors to whom defendants delivered the oil.

3. MINES AND MINERALS ☞79(3)—OIL LESSORS RECOVERING ROYALTIES FOR OIL DELIVERED BY LESSEE TO WRONG PARTY ENTITLED TO INTEREST FROM THE TIME OF JUDICIAL DEMAND FOR ROYALTIES.

Where defendants holding oil leases on adjoining lands delivered royalties to lessors of land adjoining that on which the well was situated instead of to plaintiffs' lessors of such land because of mistake as to the boundary, plaintiffs, in recovering royalties, were entitled to interest from the time of judicial demand therefor.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Suit by Henry M. Russell and others

against the Producers' Oil Company and another. From judgment rendered, plaintiffs appeal. Judgment set aside, and judgment rendered for plaintiffs.

Hampden Story, of Shreveport, for appellants.

N. C. Blanchard, Clifton F. Davis, and E. Wayles Browne, all of Shreveport, for appellees.

PROVOSTY, J. The Producers' Oil Company, defendant in this suit, obtained an oil lease from the Atlanta & Shreveport Oil & Gas Company (hereinafter called the Atlanta Company), and obtained, on the land adjoining, a lease of the same kind from the Russell heirs, plaintiffs in this suit, and in October, 1910, "brought in" an oil well, supposedly on the tract of the Atlanta Company. At once a suit entitled Wadkins v. Producers' Oil Co. was instituted against the defendant in the present suit, and the Atlanta Company, contesting, as to one undivided half, the latter company's title. That suit terminated favorably to the defendants on March 11, 1912. 130 La. 308, 57 South. 937. It was still pending when, on April 15, 1911, the present suit was instituted, which originally, though in the form of a petitory action, was in reality a suit in boundary; the oil well being so near the line between the two tracts as to render doubtful on which one it was. The trial court decided in favor of defendants; that is, it so located the boundary line as to place the well on the Atlanta Company's side of it. The date of that judgment is January 27, 1913. The plaintiffs appealed, but not suspensively, and only six months later. This court in October, 1915, set the judgment aside, and remanded the case for further evidence. 138 La. 184, 70 South. 92. On this remand, the trial court located the line as before; but this court, on a second appeal, which again was not suspensive, located the line so as to give the

well to plaintiffs, holding at the same time that defendant was accountable to plaintiffs only for the royalty under the lease, and not, as claimed by plaintiffs, for the total production of the well, and remanded the case for this accounting to be had. The date of that decision is April 11, 1918. 143 La. 217, 78 South. 473.

Under the terms of the lease the royalty was to consist of one-sixth of the oil produced; and it was to be accounted for, not in money, but by the delivery of the royalty oil itself to the lessor. Pending the litigations, however, the defendant company, assuming that the well would be found to be on the land of the Atlanta Company, delivered this royalty oil to that company, taking a bond for the return of the price in the event of an adverse decision, so that the accounting must now be in money.

The disagreement between the parties is: (a) As to the quantity of oil produced by the well; (b) as to whether the market price of the oil should be fixed as of the date of the delivery to the Atlanta Company, or as of the date of the said judgment of this court, of April 11, 1918, ordering this royalty to be delivered to plaintiffs; (c) as to whether defendant should pay interest on the money thus to be accounted for, and, if so, from what date.

The disagreement as to quantity results from the fact that other wells were brought in on the tract of the Atlanta Company, and no separate record was kept of the output of each of the wells, but the oil coming from them was run indiscriminately into the transportation pipe line; settlement for the royalty being made by the assignment of a one-sixth part to the Atlanta Company. This commingling of the oil from the several wells began, of course, only from the time the first of these other wells was brought in.

As a record was kept of the deliveries into the pipe line, there is no disagreement between the parties as to the quantity produced up to the date the first of these other wells was brought in, which was March 1, 1911.

It being now impossible to ascertain exactly what proportion of the commingled oil came from plaintiffs' well, plaintiffs invoke the principle that, "where goods are wrongfully commingled, the wrongdoer will lose his interest therein, unless he can identify the goods," and they claim the entirety of the commingled oil.

[1] This principle is, we think, inapplicable to the case; for there was no intention on the part of defendant to do wrong, but only to operate as economically as possible, and a record was kept of the group of wells from which came the oil of each delivery into the pipe line, and the daily output of each well is known approximately, so that full justice may be done to plaintiffs by letting them have the approximate output of their well plus a margin of safety.

True, the defendant technically violated the rights of plaintiffs by not keeping the output of the well separate; but the Atlanta Company was supposed to be the owner. Twice the trial court decided in its favor, and plaintiffs did not appeal suspensively; and the contrary was not established until two years after the well had ceased producing. It ceased producing on July 4, 1916; and the judgment of this court in favor of plaintiffs was not rendered until April 11, 1918, and the operation of said judgments of the trial court in favor of defendant was not arrested by suspensive appeal. Clear proof of the absence of all intention on the part of defendant to wrong plaintiffs is to be found in the fact that defendant continued to operate plaintiffs' well, although as great, if not a greater, quantity of oil could have been obtained by discontinuing its operation, and operating only the well nearest to it; the output of this other well when operated alone being as great, if not greater, than that

of the two wells when being operated at the same time. Indeed, a break in the apparatus of plaintiffs' well, which occurred on or about March 17, 1911, would have furnished a good excuse for discontinuing altogether its operation if defendant had been disposed to act unfairly; whereas defendant faithfully used every endeavor to restore the well, succeeding finally in doing so in February, 1912. And further, in the same connection, it is noteworthy that during the entire time that this commingling was going on the demand of the plaintiffs in the present suit was not for royalty, but for the entire output of the well, a thing they clearly were not entitled to, and that while they were cognizant of this commingling going on, they made no protest against it.

Without going into unnecessary details, we will adopt as the basis of settlement as to quantity the statement submitted by defendant, which has been prepared carefully and faithfully from the data now available. That account makes provision for a margin of safety to plaintiffs, in that in it plaintiffs' well is allowed the same proportion in the commingled oil for the time the well was not producing as for the time it was producing. Thus it is allowed this proportion for the interval from March 16, 1911, to February, 1912, when it was out of commission, and down to September 25, 1917, although it finally ceased producing on July 4, 1916.

According to this statement, the quantity of the royalty oil to March 1, 1911, when plaintiffs' well alone was producing, was 83,725.30 barrels; and the quantity thereafter, when the oil was commingled, was 8,277.99 barrels.

The defendant company received from the Atlanta Company $42,173.35 as being the price at which the royalty oil from plaintiffs' well was sold, the quantity being fixed as shown by the statement hereinabove referred to as having been submitted by defendant to serve as a basis for the accounting in this suit. There is no denial that this was the market price at that time; but plaintiffs contend that the accounting should be on the basis of the market price not as of that time, but as of the time when by the final judgment of this court the royalty oil was ordered to be delivered to plaintiffs; the argument being that the equivalent of the oil which this judgment orders to be delivered is not the market value of oil of like quality at some time in the past, but is the market value at the time when for complying with the judgment the delivery has to be made.

[2] Here again the plaintiffs are, we think, seeking to hold the defendant company to too strict an accountability. Pending the said litigations, and under the circumstances, the oil being expensive to keep, and the fluctuation of the market being as likely to be downward as upward, the judicious course to pursue was the one which the defendant company adopted in disposing of the oil at the then market value. This is what the plaintiffs would have done if the oil had been delivered to them instead of to the Atlanta Company. In thus disposing of the oil the Atlanta Company was acting according to what was the best interest of the owner of the oil, which it supposed itself to be.

[3] Plaintiffs, however, having been kept out of this price from the time the oil should have been delivered to them, they would not be receiving the full measure of their right if they were not allowed interest on this price from that time. In vain the defendant seeks to put itself in the position of a mere stakeholder. It was defendant in the suit, and demand was being made of it for the delivery of the oil. Interest is due, therefore, at the legal rate from judicial demand, computed from the date of the filing of the suit, April 15, 1911, on the price of that part of the oil delivered to the Atlanta Company previous

to that date, and on the price of the other deliveries from the date or dates of these other deliveries.

The quantities and dates of the latter deliveries are stated in the exhibit submitted by defendant; but what was the market price at the several dates is not established in the record. We are satisfied, however, that the parties will have no difficulty in agreeing upon what the price was. For the purpose of such agreement being arrived at, or for the fixing of this price by evidence in the event the parties do not come to an agreement, we shall remand the case. Since this case was last remanded, the Texas Company has succeeded to all the rights and obligations of the Producers' Oil Company, and is now a defendant in the suit.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiffs in this suit, the heirs of John A. Russell, have judgment against the defendants, the Producers' Oil Company and the Texas Company in solido for the sum of $42,173.35, with 5 per cent. interest per annum on $34,327.37 thereof from April 15, 1911, and like interest on the several amounts which constitute the balance thereof from the dates these several amounts became due according to the statement or exhibit annexed to defendant's answer in this suit, entitled "Statement of Oil Run from A. & S. O. & G. Co. Well No. 1, from March 1, 1911, to September, 1917, Inclusive on Equal Proportions with Other Wells on Same Lease," to December 11, 1918, when the said amount of $42,173.35 was tendered to the plaintiffs by defendant company and deposited in the registry of the court; and for the purpose of fixing the dates at which the said amounts constituting the said sum of $7,845.-35 became due as per the said statement or exhibit annexed to defendant's answer, the case is remanded to the trial court, and that the said defendants in solido pay the costs of this suit.