(78 South. 473)

No. 22485.

RUSSELL et al. v. PRODUCERS' OIL CO. et al.

(Feb. 25, 1918. On Application for Rehearing, April 11, 1918.)

*(Syllabus by Editorial Staff.)*

1. REAL ACTIONS ⚌8(2)—PETITORY ACTION—BURDEN OF PROOF.

In a petitory action, the burden of proof is on plaintiff, and he can recover only on the strength of his own title, and not on the weakness of his adversary's.

[1] 142 La. 822.

2. BOUNDARIES ⚌33 — ACTION—BURDEN OF PROOF.

In an action in boundary, the law requires proof from each of the contiguous owners, and the burden is divided.

3. BOUNDARIES ⚌39—ACTION IN BOUNDARY —INVESTIGATION BY EXPERTS.

In a boundary suit, the court, when not satisfied either from the lack of evidence or the weakness of its probative force, may cause of its own motion an investigation by experts to ascertain the facts necessary to reach an intelligent conclusion and render proper decree.

4. BOUNDARIES ⚌39—BOUNDARY SUIT—INVESTIGATION BY EXPERTS.

In a petitory suit, changed by the manner of conducting trial into an action in boundary, the evidence being such that the judge cannot render a decision thereon, he may properly cause an investigation by experts to ascertain the facts.

5. BOUNDARIES ⚌8—ACTION IN BOUNDARY —UNCERTAINTY—RIGHT TO DETERMINATION —STATUTE.

In boundary suit, though it seems impossible to determine with mathematical certainty the location of the disputed line, plaintiffs are entitled to have the limits of their property fixed under C. C. art. 823.

6. BOUNDARIES ⚌37(3)—LOCATION—SUFFICIENCY OF EVIDENCE.

In a boundary suit involving ownership of an oil well, evidence *held* sufficient to justify decree for plaintiffs.

7. MINES AND MINERALS ⚌73—OIL LEASE—INCLUSION OF WELL—PRESUMPTION.

Where, when an oil lease was executed from plaintiffs to a defendant oil company, the land on which a well had been drilled was claimed by another defendant company, which believed the well was inside its boundary line, though neither it nor plaintiffs knew the truth of the matter, in view of the circumstances, there is a reasonable presumption that the well was included in the lease.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Suit by Henry M. Russell and others against the Producers' Oil Company and another. From a judgment for defendants, plaintiffs appeal. Reversed, decree directed, and case remanded.

Clifton F. Davis, E. Wayles Browne, and Blanchard & Smith, all of Shreveport, for appellants. Hampden Story, of Shreveport, for appellee Producers' Oil Co. Herndon &

Herndon and Frank J. Looney, all of Shreveport, for appellee Atlanta & Shreveport Oil & Gas Co.

LECHE, J. The proceedings and the issues involved in this case are fully stated ·in an opinion delivered by the Chief Justice October 18, 1915, and reported in 138 La. at page 184, 70 South. 92.

After stating the salient facts which appeared in a· massive transcript of testimony, written and· printed documents, tracings, and maps, but without expressing any opinion on the merits of the claims advanced by the litigants, we therein stated :

"We abstain from a discussion of the main question in the case, not because of any failure to consider it, but because we are impressed with the conviction that the interests of justice will be best subserved by letting in the further light suggested by the motion to remand. The question to be determined is whether a well has been drilled upon the one side or the other of a line which should divide two quarter sections of land in a section and township which have been surveyed and subdivided by the authority of the government of the United States. One might think it a very simple question, but it is not so. No one on earth can furnish the information necessary for its decision, save the gentlemen of the civil engineering and surveying profession, and those of them who have testified in that behalf in this case have arrayed themselves upon opposing sides, etc. * * * The suggestion contained in the motion to remand is that the United States government * * * has thought proper, since the trial in the district court, to order a resurvey of the township in which the land here in dispute is situated, and, in order that the work should be thoroughly and scientifically done, required that the head of its surveying department should give it his personal attention."

The case was then remanded for the introduction of such additional and competent evidence as the litigants might see fit to offer touching the question of the proper location of the line dividing the N. E. ¼ of the S. W. ¼ from the S. E. ¼ of section 3, township 20 N., range 16 W., in Caddo parish, and also for the purpose of permitting the litigants to introduce additional evidence upon the question whether, in the event judgment be rendered in favor of plaintiffs, the defendant Producers' Oil Company should be held for the value of the whole amount of oil produced from the well in controversy or for royalty as agreed upon in the contract of lease set up by said company.

Pursuant to that decree the case was again tried in the district court for the parish of Caddo. The testimony of the surveyors employed in the survey by the United States government was taken and also that of several other surveyors, which, with a lot of maps, tracings, field notes, and typewritten and printed documents, has reached this court in the shape of an additional transcript.

The district judge, in a written opinion, at first came to the conclusion that he could not from the mass of evidence before him and which he characterized as "confusion worse confounded" reach an intelligent conclusion, and he thereupon ordered, ex officio and under his instructions as to the manner of proceeding, that a survey of the line in dispute be made by W. E. Martin and George R. Wilson, their report to be made within 30 days.

That report was duly made, locating the line 14.7 feet west of the center of the well, and thus placing the well on the land of defendant. In accordance with the said report, which, though opposed, was approved and homologated, judgment was rendered in favor of defendants.

The present appeal was taken by plaintiffs from that judgment.

Although the present case, as stated in our original opinion, bears all the earmarks of a petitory action, it has resolved itself by the admission of testimony, by the manner of conducting the trial, and by the action of the trial judge, approved and assented to by all the parties, into an action in boundary pure and simple. When the trial judge in his written opinion (Transcript, p. 46) announced, in substance, that the evi-

dence was too vague and indefinite to justify a finding on his part, and he, ex officio, ordered a survey by two surveyors of his own selection, he practically treated the case as an action in boundary. He proceeded precisely in the manner prescribed by the Civil Code (articles 841, 834, 837) to fix the limits between two contiguous estates. The action of the judge was approved by plaintiffs when they asked that he amend the instructions which he first gave to the commission of surveyors appointed by him, and it was approved and assented to by defendants when they moved (Transcript, p. 10) to homologate the report of the commission. It thus appears that the suit originally instituted as a petitory action has, by consent of all parties, been converted into an action in boundary. It is proper that this change in the real nature of the action should have been recognized and consented to, for, after all, there is no question of title involved herein. The parties, plaintiffs and defendants, admit each others' titles. Plaintiffs do not question that defendants own the S. E. ¼ of section 3, nor do defendants assail the title of plaintiffs to the N. W. ¼, the N. E. ¼, and the S. W. ¼, of the S. W. ¼ of the same section; the respective titles of the parties as to their lands are not at issue. What the parties do contest is the location of the dividing line between their properties, for upon the location of that line will depend the ownership of the oil well.

[1-4] It is important that the character of the present action be definitely ascertained and fixed in order to place the burden of proof where it properly belongs. In a petitory action, that burden is upon plaintiff who can recover only on the strength of his own title, and not upon the weakness of his adversary's. In an action in boundary, the law requires proof from each of the contiguous owners, and the burden is divided. In a petitory action, the court will either nonsuit plaintiff or dismiss his demand if he fails to prove his ownership by a preponderance of evidence, while in a boundary suit the court may, when not satisfied either from the lack of evidence or the weakness of its probative force, cause, ex proprio motu an investigation by experts in order to ascertain the facts necessary to reach an intelligent conclusion and to render a proper decree. That is what the trial judge did in this case. His action was not excepted to, but was approved by the parties, and the proceeding was, in our opinion, logical and appropriate. It would have been of no advantage to any one, and it would have certainly prolonged this litigation, to have dismissed plaintiffs' suit and compelled them to bring another suit, an action in boundary, in order to accomplish the very same purpose.

We therefore dismiss from further consideration all question of burden of proof, and instead of viewing this case as one involving title to property, we will deal with it as one involving the location of a boundary between two contiguous estates, whose titles by their respective owners are not even remotely at issue.

Referring to the sketch which appears at page 186 of 138 La. (70 South. 92), a straight line joining the points on said sketch, marked "I" and "O," represents the boundary between the properties of plaintiffs and defendant; it is the dividing line between the W. ½ and the E. ½ of section 3, and therefore the proper location of that line must depend upon the proper location of the points "I" and "O". The point "I" was originally established in the official survey made by Mr. Williamson Jones, United States deputy surveyor, in 1837, and the point "O" was similarly established by Mr. A. W. Warren, United States deputy surveyor, in 1839, but all the visible signs and monuments by which these two points, designated in the

field as corners, were marked for identification, have, by the lapse of time, been obliterated. The problem, then, which was submitted to the engineers and surveyors who have been engaged in running the line I–O, involved the re-establishment of these two corners and relocating them exactly where they had been originally established by Jones and by Warren. In order to solve that problem, these gentlemen were compelled to have recourse to the only rational method recognized in their profession, that is, to start a survey from some other known corners, to reproduce and prolong lines according to the courses and distances indicated in the field notes accompanying the original surveys made by these two surveyors, until the two corners to be re-established are reached and located, then to prove up the result thus obtained by closing the whole survey and comparing the areas thus found with the areas given in the original surveys.

Several surveys, in accordance with the method thus indicated, were made in order to re-establish the lines and corners originally established by Jones and Warren.

[5] Mr. W. E. Martin, appointed by the court in behalf of plaintiffs, made a survey in which he located the line "I–O," 22.2 feet east of the oil well. Mr. H. E. Barnes, similarly appointed on behalf of defendants, found the line to be 15.7 feet west of the well. A private survey by Mr. H. H. Jenkins, on behalf of defendants, located the line 35 feet west of the well. Mr. A. D. Kidder, acting on behalf of the United States government, who made a survey for purposes not connected with this litigation, located the line 1.74 feet east of the well. Mr. Welman Bradford, who was employed by defendants, found the line to be 31.02 feet west of the well. Messrs. Martin and Wilson, surveying under directions and instructions from the trial court, reported the line run under those instructions to be 14.7 feet west of the well. Many other surveyors testified in the case, and the diversity of opinion among these gentlemen is almost bewildering to the lay mind. The line in question has, by calculations based upon the resurveys in evidence, been located by these witnesses in many different positions varying from 35 feet west of the well to 22.2 feet east of it. But there is one fact which appears to be undisputed in this case, and it is that not one of the resurveys will coincide in area with the original surveys of Jones and Warren, and this of itself creates some doubt as to their correctness. The gentlemen who have been employed or consulted in this matter are all reputable members of the civil engineering and surveying profession; their work seems to have been done with care, and their opinions expressed only after deliberate consideration, and it therefore seems to be impossible to determine and to prove with mathematical and absolute certainty precisely where the corners designated on the sketch as "I" and "O" were originally established. That situation may as likely be the result of error in the original field notes as in the resurveys made in connection with this litigation. But even under these conditions, plaintiffs are entitled to have the limits of their property fixed (C. C. art. 823), and we shall proceed to do so according to what we consider to be the preponderance of evidence in the case.

[6] Among the several surveys made, one stands out as most worthy of consideration by the court. It was not made on behalf of any of the parties in interest in this litigation, but it was ordered by the United States government, and it was executed under instructions from the General Land Office, whose stamp of approval has been placed upon it. The engineer under whose personal supervision the work was done was Mr. Arthur D. Kidder, supervisor in chief of surveys

of the General Land Office, Interior Department of the United States, assisted by Messrs. A. N. Kimmell and F. D. Spofford, competent and experienced surveyors. Mr. Kidder at the time he testified had been connected with the surveying department of the General Land Office for 16 years, and had occupied the high and responsible position of a supervisor in chief of surveys with eight assistant supervisors under him since July 1, 1910. He is the author of a treatise on the Improved Solar Transit and the compiler of the tables of azimuths of Polaris, used by the government in its surveys. In the performance of his work he used two improved solar transits recognized as scientific instruments of great precision, and, with the aid of the tables published in the Ephemeris of the Sun and Polaris, he was able, by taking a great many observations on the sun and the north star, checking one instrument with the other to obtain on the field itself an accurate north and south line, and to determine with absolute accuracy the variation of the needle. His survey was begun about October 20, 1913, and with constant and continued attention on his part was only completed in May, 1914. Neither he nor his assistants, though aware of a contest involving the ownership of an oil well, knew, at the time of making the survey, any of the litigants in the case, nor did they know on which side of the line in dispute the said litigants respectively claimed the oil well to be located. Under these circumstances the recognized ability and competency of Mr. Kidder, the total absence of any possible bias on his part, the great care he exercised in the performance of his work, the most modern and scientific methods adopted by him, and the further fact that the result of his work bears the approval of the General Land Office, are, in our opinion, sufficient to establish a preponderance of evidence in favor of plaintiffs, and to justify a decree based

143 LA.—8

upon his findings under the law applicable to the case.

The only other question to be determined is whether plaintiffs, as owners of the soil through which the well was drilled, are entitled to its full production, or merely to a royalty thereon.

[7] When the Producers' Oil Company brought in the well on October 10, 1910, they owned mineral leases of the land on each side of the line in dispute, one from the plaintiffs and the other from defendant; that from plaintiffs having been entered into on October 8, 1910. When that lease was executed, the land on which the well had been drilled was claimed by defendant the Atlanta & Shreveport Oil & Gas Company, who believed that it was inside its boundary line, but as a matter of fact neither it nor plaintiffs knew whether the well was east or west of the line. It may have been this condition of uncertainty, as to the exact location of the line, that induced the Producers' Oil Company to secure the lease from plaintiffs. The consideration paid to plaintiffs, $250 per acre, besides stipulated royalties, is a fair indication that both parties, while in doubt, suspected that the well might be on the premises of plaintiffs. A few days after the discovery of oil, on October 14th, Mr. Henry Russell, one of the plaintiffs, acting for himself and the heirs of Russell, and who had signed the lease in that capacity, wrote the Producers' Oil Company, and his letter contains the following statement:

"We claim the said well to be on our land, and expect to be paid royalties on the same."

There is no charge that the lease was obtained by the Producers' Oil Company through fraud or misrepresentation, nor is there any demand to have it set aside and avoided, but we are asked to exclude the well from its operation.

While the well could not, in the absence of

positive knowledge on the part of the parties at the time the lease was entered into, either have been expressly included in the lease or excluded from it, the chances of plaintiffs being recognized as owners of the land on which it was located, just like the chances of obtaining oil from any other part of the leased premises, may reasonably be presumed to have been in the contemplation of the parties. Henry Russell's letter, written at a time unsuspicious, so indicates; such is the contention of the Producers' Oil Company, and our opinion is to the same effect. We therefore see no reason to hold that the well is not included in the lease from plaintiffs in favor of the Producers' Oil Company, and as not subject to its conditions and stipulations.

For these reasons, the judgment appealed from is avoided and reversed, and it is now ordered that the boundary line between the northeast quarter of the southwest quarter of section 3, township 20 N., range 16 W., owned by plaintiffs, and the northwest quarter of the southeast quarter of the same section, same township and range, owned by defendant the Atlanta & Shreveport Oil & Gas Company, as located and re-established by Mr. Arthur D. Kidder, supervisor in chief of surveys of the United States General Land Office, in his survey completed in May, 1914, as per plat on file in this record, marked Exhibit ———, be recognized and approved as the true boundary line between the said lands of plaintiffs and defendant, the Atlanta & Shreveport Oil & Gas Company; it is further ordered that the oil well situated on the lands of plaintiffs, 1.74 feet from the said boundary line and known heretofore as Atlanta & Shreveport well No. 1, be recognized and decreed as included in the lease entered into on October 8, 1910, between plaintiffs and the Producers' Oil Company and subject to the conditions and stipulations of said lease; it is further ordered that this case be remanded to the district court for the parish of Caddo for the purpose of determining the royalties that may be due by the said Producers' Oil Company to the plaintiffs herein and for a full accounting by the said Producers' Oil Company to the plaintiffs of the output of said well, and that the costs of fixing the boundary line between the properties of plaintiffs and defendant the Atlanta & Shreveport Oil & Gas Company be paid in equal portions by the said Atlanta & Shreveport Oil & Gas Company and the plaintiffs.

## On Application for Rehearing.

PER CURIAM. Applications for rehearing were filed by each of the parties to the above suit. We believe, after further consideration, that we have properly disposed of all the issues upon which we could pass, and that a rehearing should be refused, but in order to state our decree more clearly and to expressly reserve to the litigants such rights as we could not, for want of proof, have therein definitively adjudicated, we have concluded to recast said decree as follows:

"For these reasons, the judgment appealed from is avoided and reversed, and it is now ordered that the boundary line between the northeast quarter of the southwest quarter of section 3, township 20 N., range 16 W., owned by plaintiffs, and the northwest quarter of the southeast quarter of the same section, owned by defendant, the Atlanta & Shreveport Oil & Gas Company, be recognized and decreed to be that part of the straight line that connects the quarter corner on the north of section 3, with the quarter corner on the south of said section, as such corners are fixed and monumented by A. D. Kidder's resurvey, completed in May, 1914, being the center line of section 3, and which line runs 1.74 feet east of the well heretofore known as Atlanta & Shreveport well No. 1.

"It is further ordered that the said well, heretofore known as Atlanta & Shreveport well No. 1, be recognized and decreed as included in the lease entered into on October 8, 1910, between plaintiffs and the Producers' Oil Company and subject to the conditions and stipulations of said lease.

"It is further ordered that this cause be remanded to the district court for the parish of Caddo for the purpose of determining the amount of royalties that may be due by the said Producers' Oil Company to the plaintiffs and for a full accounting by the said Producers' Oil

Company to the plaintiffs of the output of said well.

"It is further ordered that all rights which the said Producers' Oil Company may have against the Atlanta & Shreveport Oil & Gas Company, as warrantors, be reserved.

"It is further ordered that the cost of fixing the boundary line between the above-described properties of plaintiffs and defendant, the Atlanta & Shreveport Oil & Gas Company, be paid in equal portions by the said plaintiffs and the Atlanta & Shreveport Oil & Gas Company; costs of appeal to be paid by appellee the Atlanta & Shreveport Oil & Gas Company."

It is ordered that our decree as thus restated be made final, and that the applications for rehearing be denied.