## FAIRBANKS v. LOUISIANA CENTRAL LUMBER CO.*

### No. 5046.

Court of Appeal of Louisiana. Second Circuit.

Oct. 10, 1935.

Thompson & Thompson, of Monroe, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, Judge.

This is a boundary suit wherein the plaintiff alleges that his property is bounded on the north and west by property owned by defendant, and that the boundary line between the contiguous estates is in dispute and should be definitely fixed in the manner prescribed by law. In accordance with the prayer, the court appointed J. W. Babbit, C. E., to make a survey. His report was accepted by defendant and opposed by plaintiff. Finding itself in doubt as to the correctness of this survey, the court in its discretion appointed a second surveyor, who, after making a partial survey, gave up the job and resigned. Whereupon, at the request of plaintiff, Warren A. Mackie, C. E., was appointed to make a further survey. His report, which differed from that of Babbit, was also accepted by defendant but opposed by plaintiff.

In a well-considered written opinion the court found that it was unable to approve the Mackie survey, and that, because of the lapse of time and the obliteration of marks, an accurate survey was impossible and the appointment of further surveyors would entail a useless expense. It accordingly rejected both the Babbit and Mackie surveys and adopted the private survey of F. C. Green because it conformed to the old recognized property lines.

From this judgment defendant has appealed and plaintiff has answered, praying that, instead of being divided, all costs be assessed against defendant.

After a careful study of the record, finding no error in the opinion of the learned trial judge, we adopt it as our own:

"Plaintiff brought this suit originally in the year 1928, seeking a judicial establishment of a boundary line between his land and that of the defendant, which joined him on the north and west. Plaintiff alleges ownership of the following described lands: Northeast quarter, south half of northwest quarter, north half of southwest quarter of section 31, township 9 north, range 6 east; fractional southwest quarter of northwest quarter and northwest quarter of southwest quarter of section 29, township 9 north, range 6 east; and north half of northwest quarter of section 32, township 9 north, range 6 east.

"The dispute or controversy herein is centered on the proper location of the range line between township 9 north, range 5 east, and township 9 north, range 6 east. With

the proper location of this range line, the boundaries between the parties here involved, including the boundary line of the Reason Bowie grant, or section 40, could be correctly established.

"A survey made by Mr. J. W. Babbit, C. E., under appointment of this court, was found unsatisfactory by a former judge of this court, and another survey was ordered accordingly. The second surveyor appointed, Mr. R. E. McKnight, after surveying a portion of these lines, for reasons unknown to the court, abandoned the survey and resigned his appointment. The court then appointed Mr. Warren A. Mackie, C. E. The survey and procès verbal of Mr. Mackie is now before the court for approval and confirmation. This survey, as well as that of Mr. Babbit, was approved by the defendant but is opposed by the plaintiff.

"In 1928 the range line between township 9 north, range 5 east, and township 9 north, range 6 east, was surveyed and located by Ruben McCarty, deputy surveyor, and this line, if possible to locate, is controlling over that established by W. R. Bringhurst, deputy surveyor in 1884. In 1836 J. W. Daniels, deputy surveyor, located and established the boundary line of Reason Bowie grant, or section 40. After a careful study of the evidence introduced and on file in this case in support of all the surveys submitted, the court still finds itself in doubt as to whether either survey is correct in its entirety.

"The principal lines in dispute are the lines running east and west on the south boundary of section 30 and the line running north and south between sections 29 and 30.

"The court finds it difficult to reconcile the survey of Mr. Mackie with the field notes of McCarty.

"According to the McCarty field notes, the southern corner common to sections 29 and 30 should be located 198 feet south of the Harrisonburg-Alexandria road. Mr. Mackie locates this corner 3.50 chains south of the present amicite highway, which, if correct, would necessarily place the old dirt road more than 100 feet south of the present highway. Plaintiff contends that prior to 1880 the old dirt road was located north of the present highway. This contention is supported by the evidence of several of the old inhabitants as well as the physical fact that any road located south of the present highway would necessarily be in the swamp or overflow lands. The evidence introduced and the topography of the terrain at this location leaves the court in grave doubt as to

the correctness of this corner as located by Mr. Mackie.

"In locating the line between sections 29 and 30, the court is not furnished with evidence of a single government marking or sign. The absence of this evidence, however, could be reasonably explained as due to the age of the McCarty survey. A check of the topography, we find the following:

"Mr. Mackie states that he crossed Coleman's creek 1382 feet from corner 'H.' McCarty places this creek 1320 feet from corner 'H,' or a difference of 62 feet.

"Mr. Mackie states that he crossed Clear Run creek at 33x15 station. McCarty places this same creek at 38x84, or a difference of 569 feet. Mr. Mackie admits that the topography of the McCarty survey absolutely refutes the location of this creek.

"Mr. Mackie fails by about 50 yards of tying to the north boundary line between plaintiff and defendant, which line had been agreed to be correct by the parties in controversy.

"In view of the above facts, the court finds that, in order to approve the Mackie survey, it would be required to disregard a large part of the McCarty survey; that it would have to relocate lines between these litigants that are now not in dispute, and that it would necessarily require the relocation of many long recognized and established lines of adjacent owners. Before such action could be taken, it would be necessary that this survey be supported by more convincing proof of its correctness than that now before this court.

"Having before it the report and procès verbal of two surveyors duly appointed by the court, and having found that neither can be approved or affirmed, the court, under ordinary conditions, would order another survey. In the present instance, the court is satisfied that both Mr. Babbit and Mr. Mackie are as able and as competent surveyors as could be found. In addition to these surveys, there has been no less than two other private surveys made of these lines by competent and able surveyors, no one of whom establishes the same line. In view of these facts, the court feels that to order a resurvey would only add to the confusion and incur greater useless cost.

"As above stated, this suit has been pending since 1928, and the ends of justice require that there should be an end to all litigation. The boundary line as contended for by the plaintiff in this controversy and as

surveyed and located by Mr. Frank C. Green, C. E., is without doubt the old lines established by private surveyors Short and others, prior to the year 1880, and were recognized by the adjacent owners as the true and correct lines prior to the ownership of either the plaintiff or defendant. The evidence before this court shows the marks and blazes of these lines to be unmistakably that of private surveys and not those peculiar to government surveys, but they are without doubt old and made many years ago when the original government survey was fresh and the markings and signs more easily located than now. In the absence of better proof, the court feels that the danger of error would be much less in accepting this retracing as correct, in preference to either the Babbit or Mackie surveys.

"For the reasons above assigned, it is therefore ordered, adjudged, and decreed that the boundary lines between lands of the plaintiff, W. S. Fairbanks, and the defendant, Louisiana Central Lumber Company, be, and the same is hereby, fixed and established as follows: Beginning at the northeast corner of section 31, township 9 north, range 6 east, being the corner established by Ruben McCarty, United States surveyor in 1829, and as relocated by F. C. Green, C. E., in 1928; thence run north 60 degrees west, 10 chains; thence north 30 degrees east, 17.36 chains; thence north 1 degree, 28' east, 40 chains; thence east to section 40 line; thence south 30 degrees west to Bird's creek. Then recommence at the northeast corner of section 31 above mentioned; then run west 40 chains; thence south 20 chains; thence west 44 chains; thence south 20 chains to Manifest-Harrisonburg highway, as shown by plat made by F. C. Green, C. E., in evidence in this suit marked 'Plaintiff Exhibit No. 1.'

"The cost of this suit to be borne equally by plaintiff and defendant.

"Judgment rendered, read, and signed in Open Court, this the 22d day of November, A. D. 1934.

> "R. R. Reeves
> "District Judge."

As to the question of costs, it appears that plaintiff in his petition recognizes and alleges that the line is in dispute and should be judicially determined. The truth of the assertion is borne out by the hopelessly conflicting surveys. The Green survey is only adopted because a definite location of the line is found impossible and it conforms with and describes the old recognized lines. The necessity for this proceeding being alleged by plaintiff and amply established by the evidence, we can find no justification for departing from the rule laid down in article 663 of the Civil Code, reading as follows: "*Boundaries—Right to have Established.* He may compel his neighbors to fix and mark the limits of their estates which are contiguous to his. The limits are established, and boundary stones or posts placed at their joint expense."

This article is in conflict with section 3744 of the Revised Statutes of 1870, but in Deshotels v. Guillory (La. App.) 161 So. 217, it is held that the codal article prevails.

In Capo v. Blanchard, 1 La. App. 3, it is held that, when a defendant has resisted the fixing of boundaries, he owes the whole of the surveyor's costs.

Where the defendant refuses to have a boundary line fixed and resists the action, equity requires that he should bear the burden of the costs. Andrews v. Knox, 10 La. Ann. 604; Lacour v. Watson, 12 La. Ann. 214; Williams v. Close, 14 La. Ann. 737; Gaude v. Williams, 47 La. Ann. 1325, 17 So. 844.

In an action of boundary, the costs should be equally divided where there is no proof in the record of a demand on one side and refusal on the other to settle the boundary amicably. Tircuit v. Pelanne et al., 14 La. Ann. 215; Sonnier v. Sonnier, 1 La. App. 212.

In the present case there is no proof of such demand and refusal, nor does the defendant resist the action. This being true the costs of the lower court were correctly divided.

For the reasons above assigned, the judgment appealed from is affirmed; defendant to pay the costs of appeal.

TALIAFERRO, J., recused.