181 So. 859

DUFRENE v. BERNSTEIN.

No. 34745.

May 2, 1938.

Rehearing Denied May 30, 1938.

Alfred D. Danziger, Hugh M. Wilkinson, and George M. Leppert, all of New Orleans, for appellant.

John E. Fleury, of Gretna, and Porteous, Johnson & Humphrey, of New Orleans, for appellee.

FOURNET, Justice.

This is an action involving the boundary line between the south half and the north half of a tract of land known as the Temple belonging to plaintiff and defendant, respectively. From a judgment of the lower court fixing the boundary in accordance with the report of the surveyor appointed by the court, the defendant has appealed.

The Temple is a peninsular tract of land situated in the Parish of Jefferson on the Island of Barataria, containing approximately 4,000 acres of land, mainly used for trapping purposes. It is bounded on the north by Lot No. 9 of Section 2, Tp. 16, S. R. 23 E., and narrows down to a point at its southern extremity where Bayou Perot (its western boundary) and Bayou Rigollettes (its eastern boundary) meet and converge. On March 9th, 1923, the Delaware-Louisiana Fur Trapping Company, Inc., which was the owner of the Temple, sold to Antoine Luke Dufrene, plaintiff, by notarial act dated March 9th, 1923, "what is known as the south one-half of * * * the Temple * * *," said to contain 2,000 acres more or less, but there was excepted therefrom the extreme southern portion thereof known as the Little Temple, said to contain 300 acres more or less; and by notarial act dated April 14th, 1932, it sold to Mrs. Laura Serpas Zimmerman several tracts of land, including the remaining portion of the Temple, the pertinent part of the description being as follows: "A certain parcel of land * * * known as part of the 'Temple,' bounded on the north by Lot No. Nine (9), * * * and on the south by the southern half of the land known as the 'Temple,' containing approximately twenty-five hundred (2,500) acres." Under this description, the property was transferred by Mrs. Zimmerman to Jacob Bernstein, by notarial act on May 5, 1932, and by Jacob Bernstein to his brother, Eugene Bernstein, defendant, by notarial act on September 11, 1934.

It is plaintiff's contention that by his purchase he acquired one half of the entire acreage of what is known as the Temple, or 2,000 acres, more or less—less the acreage of the Little Temple, and that defendant's authors in title, having subsequently acquired from plaintiff's vendor·the remaining portion of the Temple, is not entitled to receive more than one half of the acreage as of the date of plaintiff's purchase, regardless of the contents of his (defendant's) deed. On the other hand, it is defendant's contention that by his purchase he acquired the north half of the Temple, the "area to be calculated by drawing a line (north and south) from one end of the island to the other, dividing said line in the exact center and running a subdividing line at right angles to same." In the alternative, he contends that should we conclude that plaintiff acquired one half of the entire acreage of the Temple, that the boundary should be by calculation of one half of the acreage in accordance with the plat of a government survey of the property made by Rightor and McCullom in 1840.

Where parties derive their title from a common author, the one whose title is most ancient in date, under the express provisions of Article 847 of the Revised Civil Code, will prevail and is entitled to the full acreage conveyed to him. Keller v. Shelmire, 42 La.Ann. 323, 7 So. 587; Porche v. Lang, 16 La.Ann. 312; Lilleburg v. Coleman, 1 La.App. 650. In determining boundary lines the law recognizes certain well known guides which are in the order of their importance (1) natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. "But the controlling consideration is the intention of

the party or parties." Meyer v. Comegys, 147 La. 851, 86 So. 307, 309; Administrators of Tulane Educational Fund v. Stair, 148 La. 11, 86 So. 595, 596.

The record conclusively shows that plaintiff took immediate possession of the property purchased by him in accordance with his title, the boundary of which had been fixed by a competent surveyor by the name of Blalock who had been employed for that purpose by and with the consent and under the supervision of plaintiff and his vendor. The line was fixed so as to divide the north half and south half of the Temple equally as to acreage and was fixed by staking the distance across the property, due east and west, as shown on the map made at defendant's request by Henry E. Landry, Civil Engineer, and designated thereon as the "division line at time of survey." The boundary line as staked off by Blalock was maintained and recognized by plaintiff's vendor, through its president and manager Mr. Brady, until it sold the other half of the Temple in 1932 and was never disputed by defendants' authors in title nor by defendant until the year 1935 when he caused Landry to make a survey dividing the property in half according to distance across the property north and south and drawing a line through the center thereof running east and west, and sent trappers on the property in dispute.

We therefore conclude that it was plaintiff's intention to purchase, and his vendor to sell, the south half of the Temple according to acreage; that the boundary line between the tract purchased by him and the portion retained by his vendee was fixed by the Blalock survey; and that the defendants' authors in title, having subsequently acquired from plaintiff's vendor the northern and remaining portion of the Temple, must recognize plaintiff's previous acquisitions and established rights. The plaintiff is entitled to have his line established as it formerly stood. Zeringue v. Harang's Administrator, 17 La. 349; Falvy v. Sellers, 166 La. 207, 116 So. 853.

In the instant case there are no natural monuments to be guided by. The artificial monuments placed by Blalock have been obliterated by the elements. Blalock's plat and field notes have not been placed of record and insofar as the record shows they can not be found. We must therefore fix the "quantity" or acreage of the property conveyed to the plaintiff in accordance with the intention of the parties in order to establish the boundary of the two properties.

S. A. Calongne, surveyor, appointed by the court, made such a survey, fixing the boundary line east and west at points "C-3 . . . C-3" as shown on his plat, but defendant objected to the survey on the grounds (1) that he made his survey when both defendant and his attorney were out of the city and it was a physical impossibility for them to be present; and (2) that he did not go upon the land and make the survey, but, by the use of a government survey, made by Rightor and McCullom in 1840, and the Barataria Quadrangle Survey of 1932 of the property, he calculated the acreage and boundary line for the year 1923 in accordance with the average proportional loss by erosion between 1840 and 1932.

A review of the record shows that the surveyor gave written notice to the defendant in accordance with the requirements of Article 834 of the Revised Civil Code and to his attorney, Mr. Wilkinson, as a matter of courtesy, to which reference was made in his proces verbal, but it happened that Mr. Bernstein and his attorney were both out of the city at the time. The record also shows that, in the absence of Mr. Wilkinson, an attorney in his office wrote to Mr. Calongne suggesting that the survey be postponed until Mr. Wilkinson's return. The defendant, however, upon the receipt of the communication from Calongne, had wired to a Mr. Johnson to get in touch with the surveyor; and Mr. Calongne testified that he had a conversation with Johnson with reference to the matter and he, Johnson, did not object to his proceeding with the survey but instead said that "he could not see why we should not proceed with the work, as it was a judicial survey, and everything must be pointed out as per the letter of the law."

Under the provisions of Article 834 of the Revised Civil Code, it is the mandatory duty of the surveyor called on to fix the limits between adjacent estates "to notify, in writing, the owners interested therein to be present at the work, if they think proper, and to inform them of the day and hour when he will proceed to fix the limits * * *." The codal article does not require that the owners be present, nor is it shown here in what manner the presence of the plaintiff or the defendant could have had on the survey. Moreover, if the defendant wished to have the survey discontinued, it was his duty to make opposition thereto in accordance with Article 837 of the Revised Civil Code.

With reference to defendant's objection to the method employed by the surveyor in determining the acreage of the property as of the date of the sale in 1923, the record shows that the Temple is subject to erosion which has caused a continual change in its shore line, as well as a large reduction in its acreage between the year 1840, when it was officially surveyed by Rightor and McCullom, and 1932, when the Barataria Quadrangle Survey thereof was made. But as the evidence of the survey made in 1923 at the time of plaintiff's purchase is no longer to be found and the monuments established by that survey have been obliterated, the surveyor called on to fix the boundary established the acreage of the Temple as of 1923, by first calculating, using the graphic system, the division line of half the acreage of the entire tract of land south of Lot No. 9 in accordance with the survey of Rightor and McCullom in 1840 and the division line of half the acreage of the same property in accordance with the Barataria Quadrangle Survey of 1932, from which he determined the entire acreage lost between the years 1840 and 1932. He then determined the proportional yearly loss of acreage up to the time of the Dufrene acquisition and fixed the division line 11,899.4 feet south of Lot No. 9 at a point on the eastern boundary of the property six feet below the pirogue canal where he placed an iron stake, and from there, due west, placed iron pipes at intervals to mark the line.

Mr. Gondolfo, a civil engineer of recognized ability, was defendant's only witness. He made calculations of the property as of 1840, in accordance with the Rightor and McCullom survey and field notes, and also as of 1932, in accordance with the Barataria Quadrangle Survey, using the planimeter system. According to his findings, the Temple contained a smaller area in 1840 than Calongne found. His calculations of the property as of 1932 were substantially in accord with similar calculations made by Mr. Waddill, a civil engineer, who testified on behalf of the plaintiff. He also testified that the planimeter method of determining the acreage of the property was more accurate than the graphic method.

Mr. Waddill, a witness for the plaintiff, who is referred to by both parties as the "Dean of Surveyors in this section," also testified that he was of the opinion that the planimeter method of calculation was more accurate than the graphic, but both Mr. Waddill and Mr. Gondolfo testified that regardless of which method was used the accuracy of the result depended upon the one making the survey, and both regarded Mr. Calongne as a surveyor of recognized ability.

■ Under the express provisions of the Revised Civil Code, owners of contiguous estates have the right to have the limits and boundaries of their respective properties determined and fixed (Articles 663 and 823), and when the opinions and surveys of the experts differ and are irreconcilable, the court will decide according to what it considers the preponderance of the evidence in the case. Russell et al. v. Producers' Oil Co., 143 La. 217, 78 So. 473. See, also, Corpus Juris, Vol. 9, Sec. 343, p. 286.

■ The trial judge, in a well-considered written opinion, fixed the boundary line between the two tracts in accordance with the report and survey of S. A. Calongne. The boundary line as originally fixed by the Blalock survey was located at a point on the eastern boundary immediately north of the pirogue canal and thence due west. The fact that such a line existed and was well established and recognized is reflected in the Landry survey plat, made for and at the request of defendant in 1935, and is designated thereon as "the division line at the time of survey." By Calongne's survey the line is located on the eastern boundary of the property six feet south of the pirogue canal and thence due west, thus making a slight variation against the interests of the plaintiff who does not complain about the line as fixed. We therefore conclude that the boundary line as fixed by the Calongne survey and adopted by the lower court is correct.

The lower court has taxed all costs of these proceedings, including the surveyor's fees and costs, against the defendant which he contends is contrary to the express provisions of Article 663 of the Revised Civil Code. The article reads as follows:

"He may compel his neighbors to fix and mark the limits of their estates which are contiguous to his.

"The limits are established, and boundary stones or posts placed at their joint expense."

■ This Court has repeatedly held that where a party, as did the defendant in this case, declined to settle the boundary amicably with the adjacent owner and forced him to resort to litigation, the provisions of Article 663 do not apply and equity requires that he should bear the burden of the costs if cast. Andrews v. Knox, 10 La.Ann. 604; Lacour v Watson, 12 La.Ann. 214; Williams v. Close, 14 La.Ann. 737; Gaude v. Williams, 47 La.Ann. 1325, 17 So. 844; Fairbanks v. La. Central Lumber Co., La. App., 163 So. 209.

For the reasons assigned, the judgment of the lower court is affirmed.

O'NIELL, C. J., did not take part.