On Rehearing
AYRES, Judge.
The facts are stated in the original opinion. A rehearing was granted for a reconsideration of the testimony with particular reference to the mutuality of consent of the owners of the adjacent properties in erecting and maintaining the fence contended by the defendants as the boundary between plaintiff’s and defendants’ properties.
Plaintiff is unyielding in his contention that no mutuality of consent between the owners of said adjacent properties was established by the evidence, and that the evidence was totally lacking or wholly insufficient to establish that fact. For these reasons, it is urged our decision was erroneous and inconsistent with our holding in Hester v. Smith, La.App., 72 So.2d 549.
 An essential fact prerequisite to a court recognizing that a fence or other visible artificial boundary was erected and maintained as such is that it must have been erected and maintained as the result of the mutual consent of the respective owners and for the purpose of serving as a boundary marking the limits of their respective estates. Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Hester v. Smith, supra; Jones v. Dyer, La.App., 71 So.2d 648; Arabie v. Terrebonne, La.App., 69 So.2d 516. There was no intention to depart from this principle. The complaint is more properly based on the insufficiency of the *553 evidence upon which we reached the conclusion there was a mutuality of consent of the parties in the erection and maintenance of the fence as a boundary. As heretofore stated, the disputed area, approximately 900 feet long, with a width of 89.5 feet at the north end, and 113 at the south end, lies within the descriptive title of plaintiff and his authors in title. Thus, defendants are claiming beyond their title in diminution of plaintiff's title. Primarily, the boundaries 'between adjoining estates shall be recognized according to the titles thereto. For instance, LSA-C.C. Art. 841 provides:
“It is the duty of the judge who has cognizance of suits on the subject of limits, to appoint surveyors to inspect the premises in question, and the court, on their report, ought to decide according to the titles of the parties, and the plans which shall be presented to the court.”
However, where there is a visible boundary which has been in existence for 30 years or more and defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription will be sustained as a barrier to the action in boundary. LSA-C.C. Art. 852. Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Henly v. Kask, La.App., 11 So.2d 230. In such a case the burden of proving the facts necessary to support this prescription is upon the defendants who plead it. Sattler v. Pellichino, La.App., 71 So.2d 689; Hester v. Smith, supra.
In our original opinion we attached considerable importance to the testimony of J. B. Hawkins as to the location and construction of the fence and to the testimony of several other witnesses, which was to the effect that the fence had been generally recognized in the community as a boundary line fence. Our conclusion reached after reconsideration is that we gave undue weight to this evidence. J. B. Hawkins testified that he assisted his father, J. M. Hawkins, in the construction of this fence. He was at the time about 20 years of age, and, on being thus interrogated by the court, “Q. Why was the fence put up ? What was it for ? ” he answered: “We didn’t have a stock law then. We had to fence against hogs and cattle.” Hawkins further testified that his father was assisted in locating the line for the fence by one J. M. Hale, whom he called a surveyor, and who was a brother of Jacob R. Hale, who was then the owner of the land adjoining the Hawkins’ property on the east. When asked “Was that a joint fence that your father and Mr. Hale built together * * * ? ” Hawkins replied: “No, sir. We just put it up there ourselves. That was all in woods back there, wasn’t none of it in cultivation back there at all,” and to the question, “You say that ‘they’ had it surveyed off ? ” he answered: “My father had it surveyed off.” This witness had no knowledge of any agreement between his father and Jacob R. Hale that this fence was to be the boundary line marking the limits of their respective properties. There was no other direct evidence on this point and, unless it could be assumed from the fact that J. M. Hawkins and Jacob R. Hale were brothers-in-law and that Hale’s brother made the “survey” and that Jacob R. Hale was living with the Hawkins family, and that Jacob R. Hale knew about or consented to the erection of this fence, or to its erection on any line, it has not been established that he even had knowledge of said construction or its location, much less that he ever consented thereto or subsequently acquiesced therein. We cannot indulge in assumptions to the extent of accepting them as proof of facts which must be proved. According to the testimony, Hale took no part in the survey or the erection of the fence, and the record is completely barren of testimony showing his consent and agreement that this fence would form a boundary line of his property.
Even if it could be. reasonably concluded that James M. Hawkins and his son intended to erect the fence on the boundary line, such alone is not sufficient. *554 The important factor is that Jacob R. Hale must also have consented and agreed that the fence constitute a boundary between his and the Hawkins properties. On this phase of the evidence, careful and repeated examination of the testimony bearing on this point convinces us that we were in error and that defendants have failed to establish by any reasonable preponderance that the fence erected in 1904 was intended by Jacob R. Hale as a boundary line or there was any mutual consent or agreement between him and J. M. Hawkins that 'said fence marked the 'boundary between their estates. In Hester v. Smith, supra, the evidence showed that the fence therein claimed as a boundary was built jointly by Hester and Smith, the immediate ancestors of plaintiffs and defendants, respectively. The fact that the owners of adjoining tracts joined in building the fence presents a factual situation much more favorable to defendants than the facts here. It is not shown in the instant case that one of the owners of adjacent property took any part in locating or building the fence, and it can only be surmised he knew about its location. In that case and in Sharpless v. Adkins, La.App., 22 So.2d 692, it was recognized, citing Dufrene v. Bernstein, supra, that with reference to the determination of boundaries, the intent of the party or parties is the paramount consideration and an essential requirement.
 The fact that a great number of witnesses testified that the fence had been generally regarded in the community as a boundary line is no proof that the fence was constructed as a boundary marker with the consent of Jacob R. Hale. Whatever possession the defendants and their predecessors in title have exercised beyond the calls of their titles was a mere occupancy and not an adverse possession, which is necessary to support the acquisitive prescription of 30 years. Appropriate here is the statement of the Supreme Court of Louisiana in Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, 415, reading as follows:
“The mere fact that parties owning adjoining properties have cultivated land up to a certain line, or up to a certain fence built either by one or both, or built by one and repaired by the other, does not, per se, evidence an adverse possession, or an acquiescence in, knowledge of, or recognition of an adverse ownership or adverse possession. Neighbors constantly run up fences within or beyond the boundary lines, or join fences; doing so with the knowledge and understanding that such acts are merely temporary, and done subsidiarily to, and with reference to, the right of both to ultimately ascertain and -fix rights by an action of boundary, or through a formal, legal survey. Until this happens, such land is held in ‘occupancy,’ and not in ‘adverse possession,’ — certainly, in the absence of a clear and direct claim advanced of adverse ownership and possession.”
Plaintiff’s land is situated in the SWj4 of SEj4, Section 14, Township 22 North, Range 15 West, and defendants’ land adjoins it on the west and is situated in the SEj4 of SWj4 of said Section. According to the titles of these parties and their authors in title, the ideal boundary between their lands is the north-south center line of the aforesaid section. John F. Wilkerson, surveyor, was appointed by the court and located this line and concluded in his proces verbal that this is “the true boundary between plaintiff’s and defendants’ property.” No attack is made upon the accuracy of the survey made by Wilkerson and apparently it is conceded that he observed all the legal requirements in making said survey and in locating the aforesaid boundary. No errors have been pointed out therein and our review of the survey and proces verbal fails to disclose any.
We conclude, as did the trial judge, that the evidence sustains the correctness of the location of the ideal boundary and the one specified by tire titles of these parties. Therefore, we find the judgment of the *555 district court correct in homologating and approving the survey of surveyor Wilkerson and in decreeing the boundary line between plaintiff’s and defendants’ properties to be in accordance with said survey, proces verbal and map thereof.
However, for the reasons given in our original opinion, the costs of this proceeding, including the costs and fees of the surveyor and of the expert witnesses, should be paid in equal proportions, one-half by plaintiff and one-half by defendants, except the costs of appeal, in which plaintiff prevails and which costs should be borne by the defendants, and, likewise for the reasons therein stated, for the purpose of determining the amount and the fixing of said fees, this cause should be remanded for a new trial thereon.
For the reasons herein assigned, our judgment on the original hearing herein is annulled and set aside and the judgment from which appealed is affirmed, except the costs are assessed one-half to plaintiff and one-half to defendants, except as to the appeal, which are cast against the defendants, and further that a new trial is granted for the purpose of determining and fixing the costs and fees of the surveyor and expert witnesses, and for that purpose the case is remanded to the First Judicial District Court in and for Caddo Parish, Louisiana, for a new trial, in accordance with law.
The right is reserved to defendants to make application for a rehearing.
Judgment affirmed and case remanded for a new trial on the rule to determine and fix the fees of the surveyor and of the expert witnesses.