ARMSTRONG, Judge.
Plaintiff, Robert Vanlangendonck, filed a petition to fix boundary in February 1980 in which he alleged that the boundary between his property and that of defendant, Maxie Castilow, was no longer properly fixed and that efforts to amicably fix said boundary had been unsuccessful. In March 1981 the court appointed R.L. Schumann to survey the property in question. The matter was tried before a commissioner, whose findings were later adopted by the trial court.
In its judgment the trial court ruled that the boundary was to be “established at a line 65 ft. 8 in. long lying a distance away [from the mid-line of the common wall between lots 12 and 13] of 35 ft. 11 in. 5 lines in the front and rear of lot 13.” Both parties are now appealing the lower court’s judgment and findings. The primary issue presented by this appeal is at what point should a surveyor begin his measurements when neither markers nor ancient monuments exist.[1]
The record reflects that Vanlangendonck and Castilow own lots 14 and 13, respectively, of square 84 located in the French Quarter in New Orleans. Said lots, along with lots 9 through 12, 15 and 16, lie on Ursuline Street between Burgundy and Dauphine Streets. The alleyway between lots 13 and 14 was at one time divided by a fence. In 1975 the parties removed the fence due to its deteriorating condition, but they could not agree on where the new fence should be placed. Both parties had had surveys made in connection with the purchase of their lots and then had additional surveys made in connection with the dispute over the placement of the fence. Although a host of surveys were introduced at trial, only R.L. Schumann, John Walker and R.P. Fontcuberta testified as to the surveys they had made.
Plaintiff’s acquisition survey by the firm of Gilbert and Kelly dated 1946 and recerti-fied in 1971, portrayed plaintiff’s lot as being 65 ft. 2 in. 3 lines from Burgundy Street, 31 ft. 11 in. 5 lines in width and 65 ft. 8 in. in depth. Title called for depth of 63 ft. 11 in. 3 lines. Plaintiff's survey also portrayed the distance between the side of his house facing defendant’s house and the fence between the two as being a distance of 2 ft. 10 in.
Defendant’s acquisition survey of 1973 by the firm of Gilbert, Young and Couturie showed her lot as being 31 ft. 11 in. 5 lines in width and 65 ft. 8 in. in depth. In 1976 the distance of 97 ft. 2 in. from defendant’s property to Burgundy Street was added to *191 the survey by Couturie. The fence between the two lots was portrayed in both 1973 and 1976 as being 3 ft. 2 in. 5 lines from the side of her house. When combined the acquisition surveys of plaintiff and defendant portrayed the alleyway separating the buildings on lots 13 and 14 as being 6 ft. 5 lines in width.
In 1976 John Walker surveyed lots 13 and 14 and determined that each lot was only 31 ft. 10 in. 5 lines in width and that the width of the alleyway was only 5 ft. 10 in. 3 lines in width. Thus, Walker’s survey portrayed each lot as being 1 in. narrower and the alley as 2 in. 2 lines narrower than as portrayed in the acquisition surveys. It is this discrepancy of 2 in. 2 lines (2V4) inches that is at issue in this appeal.
Schumann’s survey conformed to the acquisition surveys as it portrayed both lots to have actual widths of 31 ft. 11 in. 5 lines and depths of 65 ft. 8 in. It also portrayed the alleyway between the buildings on the lots as being 6 ft. 5 lines wide.
Schumann obtained his measurements by starting at the corner of Burgundy and Ursuline Streets and measuring to the property lines of lots 13 and 14. In determining where on the “corner” to begin his measurements, Schumann used the street catch basins as a reference point. He acknowledged, however, that there was no marker indicating an official corner. He further acknowledged that corners are often altered in connection with street or sidewalk construction and that the present locations of the corners may not be the same as those in existence at the time the structures on lots 13 and 14 were built.
Walker, on the other hand, used as his starting point the mid-line of the common wall between lots 12 and 13 and proceeded to the boundary line between lots 13 and 14. Walker testified that he followed the lead of a survey made by J.C. Gondolfo in 1953 by beginning at the mid-line of the common wall between lots 12 and 13. Gon-dolfo had started his survey of lot 12 at the mid-line of said wall because of the practice of building common walls so as to evenly straddle the property line. Because there were neither ancient monuments nor official corners on which to base a survey, both Gondolfo and Walker used what appeared to be a reliable starting point. At the instant trial, however, there was a conflict in the expert testimony as to the date the common wall was constructed, the original thickness of the wall, and whether the wall, as either originally or presently constructed, evenly straddled the property line.
R.P. Fonteuberta testified that he had surveyed lot 14 in 1979 by starting at the corner of Burgundy and Ursuline. His results conformed to those of plaintiff’s acquisition survey.
In his findings the Commissioner determined that the mid-line of the common wall between lots 12 and 13 was the most reliable starting point for a fixing of the boundary line between lots 13 and 14. In reaching this decision the Commissioner observed that the procedure of measuring from an unofficial corner did not “show an exactitude required.”
It is well settled that “[w]hen there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.” Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). Given the relatively small discrepancy between the surveys involved herein as well as the inexact nature of surveying, we find no manifest error in the Commissioner’s finding that the boundary in question be fixed with reference to the common wall between lots 12 and 13.
On appeal, plaintiff asserts thirty-six assignments of error, several of which are covered by the above discussion. Of those not so covered, many are duplicitous, not based on objections at trial or not actually briefed. As to those remaining errors properly before this Court, we find no merit in plaintiff’s arguments. More specifically, plaintiff argues that the trial court erred in accepting Victor McGee as an ex *192 pert in architectural dating, in using the law on servitudes in establishing the boundary line, and in utilizing the common wall of lots 12 and 13 when the owner of lot 12 was not a party to the proceeding.
Victor McGee testified that he had worked for the Historic New Orleans Collection for five years doing research and providing information on the dating of buildings. Additionally, he had extensively researched the works of Henry Howard, an architect that lived from 1844-1884.
“The qualifications of an expert witness rests within the sound discretion of the trial court, and his determination will not be disturbed except for a showing of manifest error.” Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64, 66 (La.App. 4th Cir. 1979). We find no such error.
We similarly found no error in the Commissioner’s use of the wall of a non-party in determining the boundary herein. In utilizing the wall between lots 12 and 13 the Commissioner did not either fix said line or bind the owners of lots 12 and 13 thereto. The wall was merely used as a starting point or base of reference. We also note that plaintiff made no effort to join the owner of lot 12 as a party.
Finally, we find no merit to plaintiffs contention that the Commissioner erred in relying upon the law of servitudes in establishing the boundary. Plaintiff argues that in using the mid-line of the common wall between lots 12 and 13 the commissioner was relying on the law of servi-tudes which allows contiguous property owners to place a common wall on their mutual property line such that the fence is evenly divided by the line. LSA-C.C. art. 675 (1870).
In his findings, the Commissioner stated: The law does not require a presumption that the boundary line, if established within a party wall, lies at the center of such wall. However, where the wall itself, as in this case, is found to be the oldest monument then such assumption should be applied.
At trial Sam Wilson, an expert in architectural dating, testified that the common wall predated the remaining structures on lots 13 and 14. Walker testified that it was and is a common practice, especially where property is at a premium, to center a common wall on a property line as such placement is the most effective use of usable space.
The Commissioner determined that under the circumstances of this case, the mid-line of the common wall was the most reliable starting point available. Given the wealth of purely speculative testimony adduced at trial, as well as the conflicts in the experts’ opinions, we can not say that the Commissioner’s reliance on C.C. art. 675 was manifestly erroneous.
Defendant contests the Commissioner’s ruling that each party should bear its own costs and pay one-half of the surveyor’s fees. She argues in the alternative that the trial court erred in failing to allow her to re-open testimony on the issue of plaintiff’s arbitrary refusal to compromise the boundary dispute.
LSA-C.C. art. 790 and LSA-C.C.P. art. 1920 provide:
Art. 790. Costs
When the boundary is fixed extrajudi-cially costs are divided equally between the adjoining owners in the absence of contrary agreement. When the boundary is fixed judicially court costs are taxed in accordance with the rules of the Code of Civil Procedure. Expenses of litigation not taxed as court costs are borne by the person who has incurred them.
Art. 1920. Costs; parties liable; procedure for taxing
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
*193 In the instant case, the defendant did not testify and plaintiff testimony’s was devoted almost exclusively to identifying exhibits. Thus, though the parties had the opportunity to testify as to the circumstances leading up to this litigation, they chose not to do so. Moreover, in view of the discrepancies in the various surveys offered at trial, it is clear that a justiciable dispute existed which apparently could not be resolved amicably. The Commissioner’s rulings denying defendant’s motion to reopen testimony and requiring each party to bear its own costs and one-half of the court-appointed surveyor’s fees were not, therefore, erroneous.
For the foregoing reasons, the judgment of the Trial Court is affirmed.
AFFIRMED.
REDMANN, C.J., dissents.

. Under the provisions of LSA-C.C. art. 792, in fixing a boundary the court must first look to the ownership of the parties. If neither party proves ownership then the court must look to possession. When both parties rely on titles, which is the situation in the instant case, the boundary shall be fixed according to titles. LSA-C.C. art. 793. If the parties trace their titles to a common author, preference will be given to the more ancient title.
“In determining boundary lines, the law recognizes, in the order of their importance, natural monuments, artificial monuments, distances, courses, and quantity, but the controlling consideration is the intention of the parties. Dufrene v. Bernstein, 190 La. 66, 181 So. 859 (1938)." Stutts v. Humphries, 408 So.2d 940, 943 (La.App. 2nd Cir.1981).