This is a petitory action in which plaintiff is allegedly claiming title to a "certain triangular shaped tract of land lying and being situated on the west side of Bayou Boeuf, in the Parish of St. Mary, lying between the main paved highway at said point and a certain tract of land sold by the Police Jury of the Parish of St. Mary to C. I. Gathright on November 30th, 1927, by act of sale recorded in the Parish of St. Mary, under Entry No. 53,233; said triangular tract of land beginning at the western boundary of the forty foot shell road extending along Bayou Boeuf North and South, and extending a distance of approximately thirteen hundred and twenty-eight (1328) feet, and is more particularly bounded on the North by property now or formerly of C. I. Gathright, on the East by the aforesaid shell road, on the South by the main paved highway and on the West by property of unknown owners; said tract being the same property which was acquired by your petitioner from Osis Young et al., by title dated May 11, 1938, and recorded in the Conveyance Records of the Parish of St. Mary, Louisiana, on May 18, 1938, in C. O. B. 5-0, Entry No. 63,286, of the records of that Parish." Title to this property is claimed also by the defendant as being embraced within specific boundaries of property allegedly acquired and owned by him and of which he is in the actual possession. From a judgment, with written reasons assigned, dismissing plaintiff's suit and recognizing defendant as the true and lawful owner of all the property situated within specific boundaries as given in his act of acquisition, plaintiff prosecutes this appeal.
A correct resume of the sequence of events leading up to this litigation is given by the trial judge in his reasons for judgment, viz.:
"Prior to 1927 the only vehicular means of communications with that area along Bayou Boeuf to Morgan City was the meandering forty foot (40') shell road parallelling, in most instances, the course of Bayou Boeuf. For the purpose of extending U.S. Highway 90 from the East towards Morgan City and Westward, the State of Louisiana, through its Highway Department, proposed to take measures for the construction of a bridge across Bayou Boeuf and of a paved highway leading from said bridge westward towards Morgan City, with the understanding that *Page 83 
the Parish of St. Mary would provide the necessary right of way from the Western limits of said bridge towards Morgan City. Accordingly, the Police Jury of the Parish of St. Mary on May 4th, 1927, and finally on July 6th, 1927, through committees appointed for said purposes, agreed to purchase from Napoleon Young the right of way so needed.
"On September 5th, 1927, Napoleon Young conveyed to the Parish of St. Mary for a cash consideration the fee simple title of a strip of land fronting on the West side of Bayou Boeuf and extending Westward a distance of approximately two thousand ninety one feet (2,091) with a varying width of ninety eight feet (98') on the West bank of Bayou Boeuf and that of one hundred eighty five feet (185') at its western limits. On the same date mentioned above the Police Jury acquired from one Dora Moore two strips of property, adjoining and being contiguous to the strip of land acquired from Napoleon Young, thus completing the area thought necessary for the construction of said Highway."
The following is a sketch of the property acquired by the Police Jury from Napoleon Young and Dora Moore:

The Police Jury, on November 9, 1927, by resolution duly adopted, authorized its President to sell, "either at private sale or at public sale as required by law", the surplus of property purchased by it from Young and Moore appearing as not needed by the Highway Department.
In pursuance of the said resolution, the Police Jury, acting through its president, Harry P. Williams, on November 30, 1927, sold and conveyed what it considered to be the surplus as appearing as not being needed by the Highway Department, by authentic act, for a consideration of $125.00, to Miss Carrie I. Gathright, the said property being described as follows:
"First: — That certain piece of property lying and being situated in the Parish of St. Mary, State of Louisiana, known, designated and described as measuring Ninety Eight Feet (98') front along the west side of Bayou Boeuf, and on the North side and adjoining the Public Highway just West of the Bayou Boeuf Highway bridge, and extending back and West between Diverging lines, a distance of Six Hundred Feet (600'), the West line running parallel with the East line along Bayou Boeuf, measuring __________ Feet (_____). Bounded North by property of Albert N. Aucoin; East by Bayou Boeuf, South by the Public Highway; and West by property of Dora Moore, and property herein secondly described. This being part of the same property purchased by the Police Jury of the Parish of St. Mary, Louisiana, from Dora Moore by Cash Sale before Walter T. Gilmore, Notary Public, on the 5th day of September A.D. 1927, firstly described in said Act, which Act is of record in Conveyance Book 4-0, entry No. 53,083 of the Recorder's Office of the Parish of St. Mary, Louisiana; and also a part of the same property as firstly described in an Act of Cash Sale by the Police Jury of the Parish of St. Mary, Louisiana, from Napoleon Young, before Walter T. Gilmore, a Notary Public, on the 5th day of September, A.D. 1927; which act of Sale is of *Page 84 
record in Book 4-0, Entry No. 53,082 of the Recorder's Office of the Parish of St. Mary, State of Louisiana.
"Second: — That certain piece of property lying and being situated in the Parish of St. Mary, State of Louisiana, known, designated and described as measuring Thirty Five feet (35') in width by Ten Hundred, Twenty Five Feet (1025') in length, excepting therefrom a Forty foot (40') public road now being between Amelia, Louisiana and Morgan City, Louisiana; said property being bounded on the North by property of Dora Moore; East by the property herein firstly described; South by the Louisiana Highway; and, West by property herein thirdly described. Being a part of the property purchased from Napoleon Young by the Police Jury of the Parish of St. Mary, State of Louisiana, as firstly and secondly described in an Act of Cash Sale before Walter T. Gilmore, Notary Public, in and for the Parish of St. Mary, on September 5th, 1927, which said Act is of record in Conveyance Book 4-0, Entry No. 53,082 of the Recorder's Office of the Parish of St. Mary, Louisiana.
"Third: — That certain piece of property lying and being situated in the Parish of St. Mary, Louisiana, known, designated and described as measuring Fifty Feet (50') in width by Five Hundred, Six Feet (506') in length. Bounded on the North by property of Dora Moore; East by property herein secondly described and by the property of Dora Moore; South by the Louisiana Highway; and West by unknown owners. This being part of the same property as was purchased by the Police Jury of the Parish of St. Mary, State of Louisiana, from Napoleon Young, as thirdly described in an Act of Cash Sale before Walter T. Gilmore, Notary Public, on September 5th, 1927, which said Act is of record in Conveyance Book 4-0, Entry No. 53,082, and by Act of Sale from Dora Moore, as secondly therein described, before Walter T. Gilmore, Notary Public, on September 5th, 1927, of record in record book Conveyance 4-0, Entry No. 53,082 both Acts of record in the Recorder's Office of the Parish of St. Mary, Louisiana.
"Fourth: — That certain piece of property lying and being situated, and described as measuring Fifty Feet (50') in Width by Five Hundred Six Feet (506') in length. Bounded on the North by Public highway; East and South by property of Napoleon Young; and West by unknown owners. This being part of the property purchased by the Police Jury of the Parish of St. Mary from Napoleon Young, described in an Act of Cash Sale before Walter T. Gilmore, Notary Public, on September 5th, 1927 of record in Conveyance Book 4-0, Entry No. 53,082, of the Recorder's Office of the Parish of St. Mary, Louisiana."
On December 7, 1927, the Police Jury ratified and approved the action of its president "in selling for $125.00 the land left over from the right of way purchased by the Parish near Amelia."
It is to be noted that the second and third items conveyed by the Police Jury to Miss Gathright are described as being bounded on the south by "Louisiana Highway" while the fourth item is described as being bounded on the north by "public highway", which would tend to show that the proposed route of the road was tentatively understood. In fact, there is filed in evidence a sketch by Mr. Blakewood, an engineer of the Highway Department, of date of 8/31/27, showing the property purchased by the Police Jury and the tentative property needed for the construction of the proposed road, which very probably was used in the description of the property in the act of sale by the Police Jury to Miss Gathright.
In between the purchase by the Police Jury — and in turn, the purchase by Miss Gathright, it appears that the proposed road bed over the right of way was changed so as to follow a true course rather than that originally proposed. In so doing, the State of Louisiana, through the Highway Department, acquired, on April 30, 1930, from Napoleon Young, a right of way of 80 feet from the center line to the left side of said right of way. On the same day and date, the State of Louisiana, through the Highway Department, acquired from Napoleon Young a right of way "having a width of 50 feet from the *Page 85 
center line to the right side of said right of way and 50 feet from the center line to the left side of said right of way, or a total right of way of 100 feet." In this deed the provision is made "that what portion of old R. W. remaining is an exchange of property between Grantor and Grantee". These two deeds have no bearing on the asserted title of the plaintiff; in fact, he concedes that his title, if any, is predicated upon his acquisition from Osie Young et al. on May 16, 1938. Furthermore, the Parish of St. Mary had acquired the property in fee simple, subject to the right of servitude for road purposes of whatever nature or quantity needed by the Highway Department. The Parish did not transfer any property to the Highway Department. If these deeds are relevant to this case, they are more in favor of defendant, upon which we will comment later herein.
On January 22, 1930, by authentic act, Miss Gathright sold and transferred to David C. Walsh an undivided half interest in the property acquired by her from the Police Jury, the description of the property being the same as contained in the deed of acquisition.
Prior to his acquisition, the defendant employed Mr. Walter Y. Kemper, a very competent civil engineer and surveyor, to survey and fix the property of Miss Gathright and Mr. Walsh. Mr. Kemper testified that prior to his undertaking his work, he checked the offices of the Police Jury and the Clerk of Court and had informed himself of the various transactions recited supra. Afterwards he proceeded to survey and set out the property intended to be purchased by the defendant, making a plat of survey setting out fully the several transactions, including the two right of way deeds of Young to the Highway Department and the paved highway. Acting upon the report of Mr. Kemper, Miss Gathright and Mr. Walsh, by authentic act, on December 15, 1927, sold to defendant all of their right, title and interest in and to the property acquired by them from the Police Jury, using the same description as their respective acquisition. To this act of acquisition, a plat or map and survey made by Mr. Kemper showing the land acquired is annexed and made a part thereof.
On May 9, 1938, by a deed under private signature, by virtue of a resolution of the Police Jury of date of April 13, 1938, the Police Jury, through its President, quitclaimed and transferred, without warranty, unto Napoleon Young and his children, issue of his pre-deceased wife, whatever rights, if any, it had in and to triangular tracts of land, the first of which is not involved herein, and the second under the description heretofore given and which is involved in this suit.
On May 18, 1938, Napoleon Young and his children, by private act, duly acknowledged, sold to the defendant, the property acquired by them as recited hereinabove.
Under these facts, the lower court, in his written reasons, states:
"It must be conceded that at the time the Police Jury of said Parish sold the unneeded portion of said right of way that said unneeded portion or strip had as its Southern boundary, as appears from the deed itself, the 'Louisiana Highway'. The dispute arises as a result of moving further Southward the original location of the road-bed thus leaving unused a strip of land parallelling said highway and which was in turn subsequently purchased by the plaintiff as aforestated.
"Therefore, the issue between the litigants is as follows: Plaintiff claims that the unused strip brought about by the change of the road-bed location did not enter into the original sale made to Miss Gathright even though her Southern boundary was given as the 'Louisiana Highway.' In other words, plaintiff urges that the original conveyance to Miss Gathright, the author in title of Defendant, conveyed a strip bordering the original right-of-way and was changed, leaving an unused strip he, plaintiff, by conveyance became the title owner of said narrow strip which separates the original purchase by Miss Gathright from the present Highway.
"The Defendant urges that having acquired in fee simple all of the surplus of land not needed for Highway purposes out of the original right of way and that his deed and that of his authors in title called as its Southern boundary the 'Louisiana Highway', that the boundaries should govern, *Page 86 
and irrespective of a change in location of said original road bed, that the intent and purposes of said original conveyance to Mis Gathright of said surplus was to give to the vendee all of the unused land having as its Southern boundary the highway itself. In other words, going further, the plaintiff contends that defendant's title must be controlled by the measurements set forth in the deed, which measurements show a fixed width and depth, while the Defendant, on the other hand, contends that the sale must be considered as one by fixed boundaries and should therefore embrace all of said surplus having as its Southern boundary the 'Louisiana Highway'.
"Although the deed originally made to Miss Gathright and in turn acquired by Defendant, calls for fixed measurements, it is evident that it also calls for a fixed boundary abutting on 'La. Highway'. From the resolutions adopted by the Police Jury authorizing the sale of all surplus property not used for highway purposes, and the deed itself, there can be no doubt that it was the intention of the parties that the surplus of property so being conveyed should be sold in its entirety and should abutt and have as its Southern boundary the 'Louisiana Highway'. Though the road bed was changed as before stated, being moved slightly South of that originally proposed, cannot affect the intention of the parties that the Police Jury intended to sell and Miss Gathright, Defendant's author in title, to buy not only all of the unused right of way but that said unused strips would abutt the Louisiana Highway. No purpose could be served by the retention by the Police Jury of title to such narrow strips, which certainly could be of no practical value to the Police Jury or for road purposes, whereas it was to the interest of the highway and which would have added substantial to its value, commercially speaking.
"In determining boundary lines the law recognizes certain well known guides which are in the order of their importance (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses and (5) quantity. 'But the controlling consideration is the intention of the parties', Meyer v. Comegys, 147 La. 851, 86 So. 307, 309; Dufrene v. Bernstein190 La. 66, 181 So. 859. Article 854 of the Civil Code provides as follows, viz.: 'If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title.'
"Article 2495 of the Civil Code declares that: 'There can be neither increase nor dimunition of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary.'
"Seldom do we find cases which are so clearly analogous as is the instant case to that of Consolidated Co[mpanies] v. Haas Land Co., 179 La. 19, 153 So. 6, both as to facts and the law applicable.
"In the Haas case, supra, the Court, in interpreting the Codal Articles, supra, declared that our Supreme Court has invariably held that 'a sale in which specific boundaries are given is a sale per aversionem, or a sale from one fixed boundary to another, and conveys all the land within the boundaries given, whether the measure be correctly stated in the deed or not, as the designation of the boundaries control the enumeration of the quantity.' Passera v. City of New Orleans, 167 La. 199, 118 So., 867, and the numerous authorities therein cited.
"In Whitney v. Saloy, 26 La. Ann. 40, our Supreme Court declared that when streets in a plan and deed are referred to such designation controls as to measurements.
"In Kirkpatrick v. McMillen, 14 La. 497, our Supreme Court held that where several lots are sold in block, designated by numbers, in a particular square according to a plan, although the number of feet contained in each lot is specified, it is a sale per aversionem, the reference to the plan and boundaries of the streets being *Page 87 
controlling over the measurements of the lots.
"Also see Marigny v. Nivet, et al., 2 La. 498; Brand v. Daunoy, 8 Mart., N.S. 159 [19 Am.Dec. 176]; Standard Oil Co. of Louisiana v. Futral et al., 204 La. 215, 15 So.2d 65.
"The southern boundary of the triangular strips of land originally acquired by Miss Gathright from the Police Jury of the Parish of St. Mary and which was in turn conveyed to the Defendant is set forth as being the 'Louisiana Highway'. I can make no distinction between a highway and that of a street boundary, being the situation presented in the Kirkpatrick Case, or that of a railroad right of way or railway bed as was presented in the Consolidated Company's case, supra.
"In view of the Codal Articles cited above and the jurisprudence to which reference has been made, the Defendant and his authors in title must be held to have acquired and to have ownership and title to the triangular strips of land in question to the limits called for as their Southern boundary, namely the 'Louisiana Highway', commonly known as U.S. Highway 90, even though the measurements and distances as to width given in the deed falls short of such boundary. It must be equally held that the title so conveyed embraces all of the area within the boundaries so described, irrespective of the fact that a greater quantity of land is given than is called for by the measurements and distances."
After a careful reading of the record, the briefs of the litigants and the cases relied upon by the trial judge, we feel that he has correctly applied the law to the facts in the case. Furthermore, we are impressed by the testimony of Mr. Kemper. Besides, being a civil engineer and surveyor, he was offered and was recognized as an able expert in his line. He came to the conclusion that the several resolutions, acts and deeds which he examined clearly showed the intention of the Police Jury to sell to Miss Gathright and she to buy the residue of the property not needed by the Louisiana Highway Department in the construction of the paved route of U.S. #90 from the Bayou Boeuf bridge westward towards Morgan City. He is fully corroborated by the following facts: Although the deed of the Police Jury to Miss Gathright practically transfers the whole of Lot #1 of the Dora Moore acquisition, yet this property was used as a barrow pit by the Commission in obtaining necessary dirt to construct the ramp from the bridge to the Shell road. Likewise, the Commission used all of Lot No. 4 of Gathright's acquisition as the road bed for the road. It would be inequitable to hold otherwise in that the Commission had no other authority to use said properties in the manner in which it did were it not for the fact that it relied upon the acquisition of the Police Jury and the subsequent understanding with Miss Gathright that the properties were to be used by the Commission and she to be the owner of the surplus property. Miss Gathright is not claiming the ownership of the property upon which the route was constructed.
According to Mr. Kemper's testimony, the Commission found that in locating the road bed it needed additional land to the south of the centerline, and which land belonged to Napoleon Young, hence it acquired a right of way 80 feet from the center line to the south. Looking at his map and plat of survey annexed to defendant's acquisition, it is easily seen that such is the fact in that property of Napoleon Young to the south of the original acquisition by the Police Jury was needed. According to the second right of way deed, all such land as was not needed reverted back to Napoleon Young. This necessarily means the property to the south of the original acquisition of the Police Jury.
The burden of proof lies with the plaintiff. He must depend upon the strength of his title and not upon the weakness of defendant's title. The foundation of plaintiff's title is the transfer and quitclaim, without warranty, by the Police Jury of any rights, if any, it had, presumably, in any of the property it had *Page 88 
purchased from Napoleon Young. The nature of that acquisition is precarious. The Police Jury, at that time, must have felt that it did not have any residue of the property originally purchased by it. It was cognizant of the fact that it had transferred to Miss Gathright whatever surplus of its original surplus not used by the Louisiana Highway Commission.
It looks to us as though plaintiff's counsel has pitched his whole argument on the question of fraud; a fraud which is directed not at the defendant but at one of his authors in title, David C. Walsh, who was a member of the police jury at the time of the transactions supra. Yet plaintiff never did allege fraud against anyone. Certainly no fraud was shown on the part of defendant, who had a right to rely on the public records in buying the property. Fraud is never presumed; it must always be alleged and proved.
In this court, after argument and submission of the case, the plaintiff filed a plea of estoppel. The plea seems to be based upon a resolution prepared by Miss Gathright's attorney and which was presented to the Police Jury for action. In this resolution it is declared that the description of the property conveyed by the Police Jury to Miss Gathright on November 30, 1927, was vague and indefinite and it sought to authorize the President of the Police Jury to appear and clarify the description of the property. This resolution, however, was never acted upon by the Police Jury and does not form any part of the Police Jury records. Nowhere in the resolution does Miss Gathright contend that she is not the owner of the property in question. In the record in this case there is no evidence to show that Miss Gathright, or her vendees, did or omitted to do anything which could in anywise cause plaintiff, or his vendors, to be misled in the acquisition of the property. We find no merit in his plea.
For these reasons assigned, the judgment appealed from is affirmed.