64 So.2d 456 (1953)
CARLISLE
v.
GRAVES.
No. 7914.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1953.
Rehearing Denied April 14, 1953.
*457 John Makar, Natchitoches, for appellant.
J. D. Rusca, Natchitoches, for appellee.
HARDY, Judge.
Plaintiff brought this suit, alleging himself to be the owner of a certain tract of land situated in the Parishes of Red River and Natchitoches, seeking recovery from the defendant for the value of timber cut, and consequent injury to standing timber, on the said property. Defendant answered, generally denying plaintiff's claims and reconvening for damages allegedly resulting from plaintiff's attempts to slander and cloud the title of defendant to the property involved in this suit, and further praying for judgment recognizing defendant as the owner of said property. After trial there was judgment in favor of plaintiff in the sum of $533.49 and further judgment dismissing defendant's reconventional demand, from which defendant has appealed. Plaintiff has answered the appeal, seeking an increase in the amount of the judgment on the claim for damages resulting from the destruction of young timber, which item was disallowed by the trial judge.
The alleged trespass and cutting of timber by the defendant took place on property located in Natchitoches Parish and described in plaintiff's petition as being bounded as follows:
"On the north by the right of way of the Louisiana & Arkansas R'way on the south by Red River, on the east by lands now or formerly owned by Edwin Winlock and on the west by the remaining portion of said tract and lands now or formerly owned by the Heirs of Crain. Said portion of said tract is situated in Sections 18, 19, 25 and 26 in Township 11 N., Range 8 W."
Admittedly defendant owns a tract of land adjoining plaintiff on the north, and titles of both plaintiff and defendant to their properties deraign from a common ancestor, one B. B. Grappe, who acquired the land from which have come the estates of plaintiff and defendant as the result of a partition of the Lac des Mures plantation effected in July, 1898. It appears that defendant has attempted by his answer to convert this matter into a petitory action and it seems that there has been some sort of understanding between counsel for the parties litigant as to the determination of title through this proceeding. We note in brief of counsel for defendant the statement of an agreement that "the action would serve the purpose of trying title to the land in dispute."
In our opinion neither the pleadings nor the evidence adduced on trial are adequate for the accomplishment of the purpose which is apparently sought under this agreement of counsel. The judgment of the lower court is silent with respect to any pronouncement upon title to the land, and we think correctly so. The issue here presented is concerned simply with a determination as between this plaintiff and this defendant of the superior title to that particular property from which timber was cut and removed by defendant. This location is confined to an area of comparatively small acreage lying in the corner between the Louisiana & Arkansas Railroad on the north and the boundary of the Crain lands on the west.
The one point which controls and determines the conclusion of this matter may be simply stated. If it be determined that *458 the Louisiana & Arkansas Railroad has been properly fixed as the northern boundary of property owned by plaintiff and the southern boundary of property owned by defendant then, unquestionably, plaintiff is entitled to recover because of the fact that, admittedly, the cutting of timber which is the basis of plaintiff's complaint took place south of said railroad.
In order to dispose of this question it is necessary to set forth the description contained in instruments of conveyance under which the parties hold title to their respective properties.
Plaintiff's and defendant's common ancestor in title severed the estate acquired in the partition of the Lac des Mures plantation by a sale to Benjamin Grappe (one and the same person with Joseph B. Grappe) by instrument dated August 22, 1901, of property described as being:
"A certain lot of ground situated in Natchitoches and Red River Parish containing (220) Two Hundred and Twenty acres, more or less, and bounded north by S.R.R.V.R.R. east by J. F. Scopini, South by Red River, West by Red River Parish and Mrs. V. Crain."
By instrument dated November 23, 1901 Joseph B. Grappe sold to Tandy K. Giddens property described as follows:
"A certain tract of land being Sections 19, 24, 25, 26, 27, 28 and 29 in Township 11 R. 8 & 9 and more particularly described as lot of land containing Two Hundred and Twenty acres more or less, bounded north Shreveport Red River Valley Railroad Company, and east by J. F. Scopini, South by Stream of Red River, and West by stream of Red River and Mrs. Crain, being same land acquired by this vendor by Notarial act passed before E. E. Hammett Aug. 26, 1901, and recorded in Book 106, Folio 246, of the Conveyance Records of Natchitoches Parish, La., from B. B. Grappe, situated in the Parish of Natchitoches, La., with all buildings and improvements thereon and appurtenances thereto belonging."
By instrument dated December 28, 1901 Tandy K. Giddens sold to Joseph B. Grappe property described as follows:
"A certain tract of hill land situated in the Parish of Natchitoches, La., containing eighty acres, being bounded on the North by line of Shreveport and Red River Valley Ry. Co., East by J. F. Scopini, South by Stream of Red River, and on West by lands of Mrs. Crain, and `Red Fields Place now owned by this vendor."
By instrument of conveyance dated November 21, 1902, J. B. Grappe sold to Edwin A. and H. A. Carlisle certain property described as being:
"That certain tract of land situated in the Parish of Natchitoches, and being described as bounded on the North by the Shreveport & Red River Valley Rail Road, on the East by the property of J. F. Scopini, on the South by Red River and on the West by Red River and the land presently owned by Mrs. Crain, containing Eighty acres more or less, and lying in Township Eleven (11) Range (8) generally known as the Old Grappe Place, and being same property acquired by this vendor from T. K. Giddens."
As the result of various conveyances by and between members of the Carlisle family between the years 1904 and 1941 this plaintiff, John C. Carlisle, acquired the entire interest in the property above described. In all of the Carlisle deeds the northern boundary of the property conveyed is described as being the railroad right-of-way. Parenthetically, we note that the same right-of-way is intended though the name of the railroad changed from time to time, from Shreveport & Red River Valley Railroad to the L. R. & N. Railway, and finally to the Louisiana & Arkansas Railway.
By instrument of conveyance dated April 17, 1937, the defendant, C. Norman Graves, acquired from the Commercial National Bank in Shreveport and the First National Bank of Shreveport, with other lands not here under consideration, the following described property:

*459 "Also a certain tract of land containing 331.63 acres more or less situated in Section Twenty-five (25), Twenty-six (26) and Eighteen (18) Twp. 11 N., R. 8 W. as per survey recorded in Book 144 of Conveyances, page 543, said parish, bounded South by the L. R. & N. Railway Company and North by T. K. Giddens, being the same land acquired by Giddens (vendor of Steere Company) from W. H. Jack by deed of date December 29th, 1909, which deed is duly of record in Nachitoches Parish, and is referred to for further and more accurate description."
The Commercial National and First National Banks acquired by sheriff's deed in March, 1936, property sold as belonging to A. C. Steere Company, Inc., described as follows:
"Also a certain tract of land containing 331.63 acres more or less situated in Sections 25 and 26 and 18, Township 11 North, Range 8 West, as per survey recorded in Book 144 of Conveyances, page 543, said parish, bounded south by L. R. & N. Co. and north by T. K. Giddens, being the same land acquired by Giddens (vendor of Steere Co.) from W. H. Jack by deed of date December 29th, 1909, which deed is duly of record in Natchitoches Parish and is referred to for further and more accurate description."
The Steere Company acquired from Tandy K. Giddens in May, 1919, by deed of conveyance which described property as follows:
"Also a certain tract of land containing Three Hundred Thirty-one and 63/100 (331.63) acres, more or less, situated in Sections Twenty-five, Twenty-six and Eighteen (25, 26 & 18) Township Eleven (11) North, Range Eight (8) West, Natchitoches Parish, Louisiana, as per survey recorded in Book ___ of Conveyances, folio 597, said Parish, bounded South by L. R. & N. Co. and North by this vendor (lands this day and included in this deed), being same land acquired by this vendor from W. H. Jack by deed of date December 29, 1909, which deed is duly of record in Natchitoches Parish and is referred to herein for further and more accurate description."
Giddens acquired by conveyance dated December 29, 1909, from W. H. Jack property described as follows:
"A certain tract of land situated in the aforesaid state and parish containing 331.63 acres more or less, being situated in Sections 25-26 and 18 Township 11 Range 8 West La. Mer. as per plat of survey recorded in Book of Conveyances Folio 597, bounded S by L. R. & N. Ry. Co. and North by vendee."
Jack acquired the undivided one-half interest of Angus Fleming by deed of conveyance dated February 23, 1904, property described as:
"His undivided half interest in the following lands situated in the Parish of Natchitoches, bought in indivision by him the said vendor and by the vendee William H. Jack on the 29th of April, 1903, from J. Adolph Grappe and being as therein described `A certain tract of land constituting a part of the Lac DeBlieux Place originally consisting of four hundred and twenty two and 21/100 dreds acres and now reduced by 90 58/100 acres sold to Ben Grappe as per act of sale recorded in Book 106 of Conveyances to three hundred and thirty one and 63/100 acres situated in Sect. 25. 26 and 18 in Township 11 R 8 as shown by plat of survey recorded in Book of Conveyances Folio 597 with all the buildings and improvements thereon. And for a further consideration and part of the price the said W. H. Jack hereby expressly assumes and agrees to pay the 12 more bonds of J. A. Grappe maturing on the 25th of April 1904, assumed by the said Jack and the said Fleming in the sale to them from the said J. Adolph Grappe on the said 29th April 1903."
*460 Jack and Fleming acquired by instrument dated April 29, 1903, from J. Adolphus Grappe property described as follows:
"`A certain tract of land in this Parish constituting a part of the Lac DeMure plantation originally consisting of Four Hundred and Twenty Two and 21/100 acres, but now reduced by Ninety and 58/100 acres sold to Ben Grappe, as per act of sale recorded in Book 106 of Conveyances leaving now for sale Three Hundred and Thirty one and 63/100 acres situated in Sections 25, 26 and 18 in T. 11 R. 8 as shown by plat of survey recorded in Book 106 of Conveyances Folio 597 together with all the improvements thereon.' Being the same property sold and adjudicated to the vendor on the 25th day of April 1903 at the partition sale made in the Case of B. Jospeh Bouis, et al VS J. A. Grappe et al No. 12692 on the Docket of the 11th Judicial Dist. Court. The payment above recited consists of the Two Hundred Dollars in cash paid the vendor receipt whereof is hereby acknowledged, and the assumsit by the vendees of the 12 months bond of the vendor executed by him on this day for the price and sum of One Hundred and Sixty Five Dollars as shown by the proces verbal of said partition sale of even date herewith."
J. Adolphus Grappe had acquired the property by the same description last above noted at sheriff's sale on the same date, April 29, 1903.
The record is devoid of any evidence tracing defendant's chain of title beyond the above conveyance to J. Adolphus Grappe and back to B. B. Grappe, the common ancestor in title.
It is to be observed that there are no north and south boundaries set forth in the deed from the sheriff to J. Adolphus Grappe, nor in the deed from J. A. Grappe to Jack and Fleming, nor in the deed from Fleming to Jack. But it is significant that in all subsequent deeds, beginning with that of December 29, 1909 from Jack to Giddens, the southern boundary of the property conveyed is invariably fixed as the railroad line.
Defendant relies, in support of his claim of ownership, upon the contention that the amount of acreage intended to be conveyed in the instrument through which he acquired title, and the references to the plat of survey recorded in Conveyance Book Folio 597, supersede the description which fixes the southern boundary of his lands at the railroad. In further, though rather indirect, support of this contention, defendant attacks the exactness of plaintiff's northern boundary, which is the same railroad line, on the ground that the effect has been, or would be, to vest title in plaintiff to a great deal more than the specified 80 acres which was originally intended to be conveyed.
In other words, the basis of plaintiff's contention rests in the claim that the fixing or the acceptance of the railroad line as the boundary has the effect of depleting the acreage claimed by defendant and increasing the acreage to which plaintiff is entitled.
We do not think this contention is well founded. A wealth of jurisprudence of our state is sound authority for the conclusion that a sale per aversionem conveys all the land and only the land contained within the boundaries fixed, whether or not the measurements are correctly stated. Egle v. Constantin, 198 La. 899, 5 So.2d 281; Aucoin v. Marcel, La.App., 38 So.2d 81; Passera v. City of New Orleans, 167 La. 199, 118 So. 887; Consolidated Companies, Inc., v. Haas Land Co., Ltd., 179 La. 19, 153 So. 6.
The question which is here raised in our opinion is definitely and conclusively determined by the specific provisions of Article 854 of the LSA-Civil Code which reads as follows:
"If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for *461 in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title."
We think it is quite clear that there is a certain ranking of descriptive terms which is to be observed in fixing the location of properties conveyed, and it is evident that the character of descriptions employed in any instance must yield to other descriptions which are considered as being of superior rank.
In the determination of boundary lines it has been asserted that the law recognizes certain guides which are fixed in order of their importance as being (1) natural monuments; (2) artificial monuments; (3) distances; (4) courses, and (5) quantity. Aucoin v. Marcel, supra; Meyer v. Comegys, 147 La. 851, 87 So. 307; Dufrene v. Bernstein, 190 La. 66, 181 So. 859.
However counsel for defendant zealously urges, on the authority of Aucoin v. Marcel, supra, that all of these guides or standards yield to the intention of the parties which is the controlling consideration. On the authority afforded by the Aucoin case and numerous others we concede the validity of this contention, but in the instant case we find no evidence of an intention which is at variance with the fixing of the boundary. Of course, it is argued that the specification of acreage is evidence of intention, but this conclusion cannot be accepted in the face of the well-established principle that acreage, even when particularly specified, yields to descriptions of definite boundaries. The identification of land by acreage or quantity is the weakest, the lowest ranking of all the enumerated standards or guides and consequently yields to all others. W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184.
It must follow as an inevitable consequence that both plaintiff and defendant are bound by the fixing of the railroad line as the boundary between their respective properties. Since defendant in his timber cutting operation went beyond the railroad which was fixed as his southern boundary, it is evident that by such action he encroached upon plaintiff's land which extended to the same railroad as the northern boundary thereof.
In this court defendant has filed pleas of prescription of ten and thirty years under Articles 3478 and 3499 of the LSA-Civil Code.
One of the essential elements in support of the ten year prescriptive acquisition, provided in Article 3478, is set forth in Article 3479 as being a title sufficient to transfer the property, in other words, what is customarily referred to as "a deed translative of title". Since the deed under which defendant acquired specifically fixes his southern boundary as the railroad line it is evident that such deed is not translative of any title beyond the boundary fixed, and, as a consequence, this plea must fail.
Similarly the acquisitive prescription of thirty years, as fixed in Article 3499, is qualified by the requirement specified in Article 3500 that such prescription must be founded upon continuous, uninterrupted, public and unequivocal possession under the title of owner. The record in this case fails to sustain such a nature of possession and, accordingly, the plea is overruled.
There is little real dispute as to the value of the timber which was cut in the course of defendant's operations, and the testimony in the record amply sustains the finding of the district judge who fixed the valuation in the sum of $533.49.
Turning to plaintiff's insistence upon recovery for damages to young growing timber, we note that this item was specifically disallowed by the district judge on the ground that the damage was not proved with sufficient certainty to justify its claim. Examination of the record fails to convince us that there is manifest error in this finding.
Defendant's reconventional claims for damages allegedly resulting from plaintiff's attempts to slander and becloud defendant's title were not supported by the evidence, even in the slightest degree. No *462 argument appears to have been presented to this court in support of these claims, which were rejected by judgment below, and, accordingly, we assume that the same, quite properly have been abandoned.
For the reasons assigned the judgment from which appealed is affirmed at appellant's cost.