HOOD, Judge
(dissenting).
I cannot agree with some of the conclusions which have been reached by my conscientious brethren who'constitute the majority. In my opinion the trial court correctly disposed of the issues presented here, and I feel that the judgment appealed from should be affirmed.
In the deed from the Union Bank to Mr. Roy the description locates the point of beginning as “beginning at a point ten (10) feet back of the back wall of the present Union Bank building which is one hundred and eight (108) feet from the southeast corner of the Union Bank lot along Mark Street, * * The description further provides that from that point of beginning the property conveyed to Roy extends 71 feet along Mark Street, by a depth of 48.83 feet, and that it is bounded on the "west by property belonging to the Avoyelles Trust and Savings Bank.”
Assuming that the first mentioned call (10 feet back of the back wall of the present building) means what defendant says it does, then there is a conflict between that call and practically all other calls mentioned in the description. I think the majority erred in accepting that single call as being controlling and in rejecting the other calls contained in the description, some of which I consider to be much more definite and significant than the one which was accepted. I also feel that the majority has failed to consider what seems to me to be the obvious intent of the parties in completing this transaction.
In the first place, I think the single and sole call on which the majority hinges its decision is so indefinite that it cannot serve to locate a point of beginning, even if we *720 completely disregard the other clear, definite and precise calls contained in the deed. In order to follow the majority’s line of reasoning, we must assume first that the “back wall” of the bank building is the west wall of that structure. But the west wall is about 37 feet long, running north and south, and it does not touch or border on Mark Street at all. In fact, according to the plats in the record, the southwest corner of the building (or the point on the west wall which is nearest to Mark Street) is more than ten feet north of the north line of that street. It is impossible, therefore, to measure 10 feet from any part of the “back of the back wall” of that building and to arrive at a point on Mark Street which could serve as a point of beginning. The majority obviously interprets the description to mean that the point of beginning was to be ten feet west of a point where the extension of a line drawn along the west wall of the bank building would intersect the north line of Mark Street. But the description does not say that, and if we improvise the language necessary to arrive at that result, then we find that it conflicts with the other definite and specific calls. From the language contained only in the first part of the description, therefore, and without reference to other facts or calls, it seems clear to me that the call of 10 feet back of the back wall of the building was intended merely to give the general location of the point, and that the language immediately following which describes the point of beginning as being 108 feet from the southeast corner of the bank lot along Mark Street is intended to identify the specific point of beginning.
There are other facts, however, which show clearly that the trial judge was correct in concluding that the point of beginning was 108 feet west of the southeast corner of the Union Bank lot, exactly as recited in the deed.
As pointed out by the majority, in 1935 the Union Bank acquired from the Avoy-elles Trust and Savings Bank a lot of land having a frontage of 179 feet on Mark Street. In connection with that sale a survey of the property was made by E. B. Messeck, Surveyor, and a plat of that survey was attached to the deed. In that transaction the Union Bank agreed to leave open a driveway or passageway ten feet wide running in a northerly direction from Mark Street, and this driveway was described in the deed as being “immediately west of the bank building or ninety-eight (98) feet from the eastern property line of the property herein sold, * * * said driveway or passage being shown on the plat of survey of E. B. Messeck, Surveyor, attached to this sale.” The west line of this driveway was described in the deed, therefore, as being 108 feet west of the east line of the property acquired by the Union Bank. The plat made by Messeck specifically shows the west line of this driveway, which is marked, located and identified by a concrete curb (an artificial monument), and this curb is shown in all subsequent plats as being exactly 108 feet from the east line of the Union Bank property. The bank building itself is not shown on the Messeck plat.
When the Union Bank sold a portion of this property to Roy two years later, in 1937, it is obvious that the parties endeavored to track the language which had been used in the 1935 deed, and that they intended that Roy was to receive the west 71 feet of the 179 foot frontage on Mark Street which the Union Bank had acquired two years earlier, thus leaving the bank as owner of the east 108 feet of that lot. The deed specifically recites that the point of beginning is 108 feet from the southeast corner of the Union Bank lot, that from that point it is to run along Mark Street a distance of 71 feet, and that it is to be bounded on the west by property of Avoyelles Trust and Savings Bank. The east line of the Avoyelles Bank property is exactly 179 feet west of the east line of the Union Bank property.
The evidence, including the surveys made later by other surveyors, shows that there *721 were no errors in the Messeck survey and that there is no shortage in that block. If the judgment rendered by the trial court should be affirmed, as I think it should, then the Union Bank would retain a 108-foot frontage on Mark Street as the parties clearly intended, defendant Roy would acquire a lot having a frontage of 71 feet on that street as called for in the deed, Roy’s property would be bounded on the east by the concrete curb which marks the western edge of the driveway which the Union Bank agreed to keep open, and Roy’s property would be bounded on the west by property owned by the Avoyelles Bank, all exactly as provided in the deed. On the other hand, if the decision of the majority is allowed to stand, then the Union Bank will be restricted to only a 105-foot frontage on Mark Street instead of the 108-foot frontage specified in the deed, Roy’s property will encroach three feet on, or east of, the concrete curb which marks the west line of the driveway which the Bank is obliged to keep open, and Roy’s property will not be bounded on the west by property of the Avoyelles Bank, as specifically provided in the deed, but instead it will be bounded on the west by a strip of land about three feet wide apparently still owned by the Union Bank and located between Roy’s property and the Avoyelles Bank property.
I cannot agree with the majority in its conclusion that the Union Bank intended to convey to Roy a part of the passageway or driveway which it had agreed to keep open for the benefit of the owner of the property to the north of the bank, and that it intended to retain a very narrow strip of land, about three feet wide, on the east side of the property which it sold to Roy, which strip could be of no practical use or value to the bank.
I think it is significant that from the time Roy purchased the property, in 1937, until sometime in 1962, or for a period of about twenty-five years, the parties apparently recognized the concrete curb, which clearly has marked the west line of the driveway and admittedly is located 108 feet from the east line of the Union Bank lot, as being the boundary line between these two lots.
In the determination of boundary lines, our courts have recognized certain guides which are fixed in the order of their importance as follows: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (S) quantity. Aucoin v. Marcel, La.App. 1 Cir., 38 So.2d 81; Carlisle v. Graves, La.App. 2 Cir., 64 So.2d 456; Hulin v. Hale, La.App. 3 Cir., 137 So.2d 709. All of these guides or standards, however, must yield to the intention of the parties which is the controlling consideration. Carlisle v. Graves, supra; Hulin v. Hale, supra.
It is settled that in the interpretation of descriptions in deeds the entire description should be considered in determining the identity of the land conveyed. If recitals in a deed are inconsistent or repugnant, the first recital does not necessarily prevail over the latter, but the whole language of the deed should be construed together in order that the true construction may be ascertained. In such a case the court will look into the surrounding facts and will adopt that construction which is the most definite and certain and which will carry out the evident intention of the parties. Smith v. Chappell, 177 La. 311, 148 So. 242; Reynaud v. Bullock, 195 La. 86, 196 So. 29.
The majority feels that the back wall of the bank building was an artificial monument, and thus that it was entitled to great importance as a call in the description. I consider the concrete curb located exactly 108 feet from the southeast corner of the Union Bank lot as being a much more significant artificial monument. As stated by the majority, “The curb has been there at least 27 years, and it is a monument which can readily be seen by anyone in the vicinity thereof.” This concrete curb was shown on the Messeck plat, which plat was prepared and recorded just two years before the sale to Roy, while the west wall of the *722 Ijank was not shown on that plat. Also, the majority finds that the call measured from the southeast corner of the Union Bank lot is not entitled to consideration, because •this corner “cannot be ascertained without .-a survey.” I think it is significant that all .of the surveyors had no difficulty in finding the exact location of that corner, and all •surveyors agree as to its exact location.
Aside from these observations however, I think the evidence shows clearly that it was the intention of the parties that the hank was to convey to Roy, and Roy was to receive, a lot having a 71 foot frontage .on Mark Street, and that the dividing line ■between Roy’s property and the Union Bank’s property was intended to be along .the concrete curb, which is located exactly 108 feet west of the east line of the Union Bank lot.
For these reasons I respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.